No. 17,668.

IN RE INTERROGATORIES PROPOUNDED BY THE SENATE
CONCERNING HOUSE BILL 456.
(281 P. [2d] 1013)

Decided April 7, 1955.

No appearances.

MR. JUSTICE CLARK delivered the opinion of the Court.

ENTERTAINING doubts as to the constitutionality of House Bill 456, entitled *"A Bill for An Act Relating to Revenue and Taxation,"* the Senate of the Fortieth General Assembly of the State of Colorado has availed itself of the provisions of section 3, article VI, of the Constitu-

tion of the State of Colorado, and by resolution duly adopted, seeks our opinion on certain written questions thereunto appended.

The particular portion of said House Bill 456 with which the Senate is especially concerned, is Section 2 thereof, which reads as follows:

"SECTION 2. (1)  On and after the first day of the calendar month following the effective date of this act, there is hereby imposed upon and there shall be paid by and collected from each producer of oil or gas in the State of Colorado a license fee for the privilege of severing oil or gas so defined above, to be known as 'the severance fee,' such severance fee to be paid as hereinafter provided, and to be measured by the quantity of oil or gas severed as follows:

"Upon the gross market value of the oil or gas at the time and point of severance at the rate of 2% for the first $25,000 of gross market value thereof; at the rate of 3% of the gross market value thereof over $25,000 and up to $100,000; at the rate of 4% on the gross market value thereof over $100,000 and up to $300,000; at the rate of 5% of the gross market value thereof over $300,000.  Provided, however, that the provisions of this section shall not apply to the severance of oil or gas used at the oil or gas well for the purposes of operation or development thereat.

"There shall be allowed as a credit against the tax computed in accordance with the provisions of subsection (1) of this section, an amount equivalent to the proportionate part of the sum of all ad valorem taxes paid during the taxable year as the portion of the previous year in which production occurred bears to the period for which the ad valorem tax was levied upon the specific portion of the oil and gas leaseholds, and leasehold interests, and oil and gas royalties and royalty interests from which production originates and the equipment and facilities used in the severance and storage of such oil or gas, for state, county, municipal, school district, and special district pur-

posed [purposes], except such ad valorem taxes as may be paid upon equipment and facilities used in drilling for, and pipeline transportation of crude oil and natural gas; *provided, however,* that any credit allowed as hereinabove set forth shall not exceed the amount of the ad valorem taxes paid during the taxable year on oil and gas leaseholds, leasehold interests, and oil and gas royalties and royalty interests in excess of the unit of land from which said production occurred, if said land is unitized, or in excess of 640 acres, whichever is smaller.

"Receipts evidencing payment to the treasurers of the several counties of this state during the taxable year of such ad valorem taxes shall be prima facie evidence of entitlement to the allowance of the credits hereby allowed, *provided, however,* that the director of revenue may require such additional evidence as he may deem necessary to establish this right."

Prefacing its questions by its resolution, the Senate calls our attention to two specific provisions of the Constitution of Colorado and one of that of the United States:

(1) Section 2 of Article XXIV, Colorado, which provides for allocation to the Old Age Pension Fund of all sums and money including (a) "eighty-five per cent of all net revenue accrued or accruing, received or receivable from any and all excise taxes now or hereafter levied upon sales at retail, or any other purchase transaction; together with eighty-five per cent of the net revenue derived from any excise taxes now or hereafter levied upon the storage, use, or consumption of any commodity or product; * * *."

(2) Section 3 of Article X, Colorado, which requires that "All taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws, which shall presribe such regulations as shall secure a just valuation for taxation of all property, real and personal; * * *."

(3) Section 1, Article XIV, Constitution of the United States, reading as follows:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

It is represented that the matter presented is of grave importance and the occasion serious and solemn because said Bill is designed to alleviate, in part, the presently existing financial crisis with which our state is confronted, rendering it necessary to enact other revenue raising measures should the legislation contemplated by House Bill 456, supra, be held to be contrary to the limitations contained within any of the above-noted constitutional provisions. We are not advised as to how or in what manner the financial position of the state will be materially enhanced by the adoption of the proposed legislation, which expressly repeals chapter 131 of the Session Laws of 1953 (C.R.S., '53, 138-1-7), wherein are provided identical levies upon exactly the same type, kind and class of property. This, however, is a matter of policy for determination by the legislature and with which we are not concerned other than as it applies to the gravity of the situation which prompts the present request. Natural curiosity, perhaps, impels one to wonder how it can be said that an identical levy upon the same subject matter will produce more revenue for relief of the current financial crisis than already is being realized under the existing Act contemplated to be replaced by the one now being considered.

The questions to which answers are requested are as follows:

"1. Would H.B. 456, and particularly Section 2 thereof, imposing a tax on the privilege of severing oil in the State of Colorado, levy an excise tax?

"2.  Would the graduated rates in Section 2, H.B. 456, contravene Section 3, Article X, Colorado Constitution?

"3.  If the answer to Interrogatory No. 2 is in the affirmative, may the General Assembly levy an excise tax imposing a single uniform rate of taxation?

"4.  In the imposition of a severance tax on oil and gas and not upon other natural resources, would the tax imposed by H.B. 456 violate the uniform provisions of Section 3, Article X, Colorado Constitution?

"5.  In the imposition of a severance tax on oil and gas and not upon other natural resources, would the tax imposed by H.B. 456 violate the (2) privileges and immunities clause, (b) due process clause, and (c) the equal protection clause of Section 1, Article XIV, Constitution of the United States?

"6.  Would the provisions of Section 2, H.B. 456, in granting the taxpayer a credit against the severance tax here imposed, constitute a violation of Article X, Section 3, Colorado Constitution?

"7.  If the answer to Interrogatory No. 1 is in the affirmative, would the proceeds of the tax imposed by H.B. 456 be set aside, allocated and allotted to the old age pension fund, under the provisions of Section 2, Article XXIV, Colorado Constitution?"

To anyone familiar with the intricacies and fine distinctions involved in the legal interpretation of constitutonal and statutory provisions, it is apparent that the foregoing interrogatories concern matters of deep import and may not readily be answered. It also will be apparent that, since the matter comes before this Court as an original proceeding, we are deprived of the aid and assistance of competent counsel generally prevailing in instances where we are called upon to review litigated causes.

Should we answer the questions, there is no positive certainty that our conclusions in this sort of proceeding would be correct, and certainly they would not be final. Should our answer be that the proposed legislation is violative of any one of the provisions of our Constitution, the

Senate then could only consider our reply as in confirmation of its present doubts as expressed in its resolution and would be no further ahead than it is at the present moment. Should we answer to the effect that the proposed legislation is not unconstitutional in any respect, the Senate doubtless would pass said bill on third reading and it would become a statutory Act upon approval by the Governor.

In ancient days, when the oracle spoke, that which it said became law; but this is not true in our enlightened age, and when the legislature enacts a statute, it is subject to attack by every citizen who may claim to be aggrieved thereby; none such being represented in the proceedings now before us. Should such situation arise, and the statute be attacked in regular manner through proper proceedings in the courts of our state, reaching this Court in due course, we might then find ourselves confronted with an entirely different aspect of the whole situation than that which we sincerely believe to be now presented for our investigation in this ex-parte proceeding. Certainly through our efforts in undertaking to conscientiously answer the inquiries of the Senate we would become more or less influenced in the conclusions we should reach, and these doubtless would be prejudicial to any citizen who should later come to this Court following a litigated cause in the trial courts of the state. No doubt there are situations under which this Court might with propriety advise the legislature concerning contemplated legislation, but we are certain that this is not such an instance. As a general proposition we seriously doubt the wisdom of prejudging involved legal problems and fundamental constitutional interpretations in ex-parte proceedings of this nature, and it has been, and is, the policy of this Court to accommodate the legislature only in such cases as are clear and wherein no possible prejudice to anyone may later result.

For the reasons stated, we regretfully and most respect-

fully deny the request and decline to answer the questions presented, and respectfully suggest the propriety of withdrawing the same.