**BOARD OF DIRECTORS, METRO WASTEWATER RECLAMATION DISTRICT, Petitioner,**

v.

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA (a member company of American International Group, Inc., a Delaware corporation), Respondent–Intervenor.**

No. 03SC846.

Supreme Court of Colorado, En Banc.

Jan. 31, 2005.

Inman Flynn Biesterfeld Brentlinger & Moritz, P.C., Richard P. Brentlinger, Joel A. Moritz, Robert J. Thomas, Denver, for Petitioner.

Gibson, Dunn & Crutcher, LLP, Gregory J. Kerwin, Amanda J. Tessar, Denver, for Respondent–Intervenor.

White & Steele, P.C., Sandra L. Spencer, Denver, for Amicus Curiae Complex Insurance Claims Litigation Association.

Robert W. Smith, Denver, for Amici Curiae London Market Insurers.

Perkins Coie LLP, L. Norton Cutler, Stephanie E. Dunn, Brownstein Hyatt & Farber, P.C., Timothy R. Beyer, Benjamin A. Kahn, Denver, for Amicus Curiae United Policyholders.

Justice HOBBS delivered the Opinion of the Court.

Pursuant to C.A.R. 50, we granted certiorari in this case as a companion to *Friedland v. The Travelers Indemnity Co.*, No. 03SC681, 105 P.3d 639, 2005 WL 196482 (Colo. Jan. 31, 2005) on the issue of the applicability of the notice-prejudice rule to a liability insurance policy.[1]

Today we issue our decision in *Friedland*, in which we apply the notice-prejudice rule enunciated in *Clementi v. Nationwide Mutual Fire Insurance Co.*, 16 P.3d 223 (Colo. 2001), to a late-notice liability case.

In the case before us, relying on *Marez v. Dairyland Insurance Co.*, 638 P.2d 286 (Colo.1981), the district court ruled the notice-prejudice rule inapplicable to a liability policy. The Metro Wastewater Reclamation District (Metro) appealed the district court's ruling to the court of appeals, and the case was pending there when we granted certiorari.

Because Metro presented a non-justiciable issue to the district court, the court should have dismissed the petition. Accordingly, we vacate the trial court's judgment and dismiss this case.

## I.

The undisputed facts are that Metro instituted this suit to test whether the Colorado appellate courts would apply *Clementi* to liability policies or continue to apply *Marez*. Invoking section 32–4–540, C.R.S. (2003), Metro's Board of Directors passed a resolution authorizing its attorneys to institute an action calculated to result in an appellate opinion on the notice-prejudice question we have resolved today in *Friedland*.

Metro solicited an offer by National Union Fire Insurance Company of Pittsburgh, Pennsylvania (National Union) to provide an officers' and directors' liability policy containing the customary timely notice of claim and notice of suit language. Metro then petitioned the trial court under section 32–4–540 for a legal determination regarding the applicability of the notice-prejudice rule to the proposed liability policy's notice of claim and notice of suit provisions. It did not name National Union as a defendant or serve the petition on the insurance company; instead, it published notice of the petition in a local paper, as set forth in section 32–4–540. National Union did not see the notice and, accordingly, did not appear at the district court hearing.

At the time of the district court hearing, there was no policy in effect, no claim against Metro, no late notice by Metro to National Union, and no denial of coverage by National Union. Thus, there was no actual controversy. Any future dispute posited as the basis for the district court's ruling was purely conjectural.

When Metro appealed the district court's ruling that *Marez* continued to apply to liability policies, we subsequently granted certiorari under C.A.R. 50, and National Union intervened to argue that the district court lacked jurisdiction to enter its ruling.

We conclude that the General Assembly did not intend section 32–4–540 to override the constitutional authority of Colorado courts to decline the exercise of jurisdiction in a non-justiciable case.

## II.

Because Metro presented a non-justiciable issue to the trial court, it should have dismissed Metro's petition.

### A. Justiciable Questions

■ Power vested in the judicial branch of Colorado government flows primarily from

---

1. We granted certiorari here on the following issue: "Whether the trial court erred in holding that the traditional late notice rule as set forth in *Marez v. Dairyland Ins. Co.*, 638 P.2d 286 (Colo. 1981) applies to the notice provisions of the proposed AIG liability insurance policy rather than the Notice/Prejudice Rule."

Article VI, section 1, of the Colorado Constitution. In its exercise, courts limit their inquiry to the resolution of actual controversies based on real facts. *Davidson v. Comm. for Gail Schoettler, Inc.*, 24 P.3d 621, 623 (Colo.2001). The mere possibility of a future claim is not an appropriate predicate for the exercise of judicial power. *Bd. of County Comm'rs of County of Park v. Park County Sportsmen's Ranch, LLP*, 45 P.3d 693, 698 (Colo.2002).

■ In the separation of powers design of Colorado government, courts limit their exercise of judicial power through jurisprudential doctrines that include standing, mootness, and ripeness, to establish parameters for the principled exercise of judicial authority. *See Stell v. Boulder County Dep't of Soc. Servs.*, 92 P.3d 910, 914 (Colo.2004). Standing has constitutional and prudential prongs that function to limit who may bring causes of action to the courts. *City of Greenwood Vill. v. Petitioners for the Proposed City of Centennial*, 3 P.3d 427, 436–37 (Colo.2000). Mootness instructs courts not to grant relief that would have no practical effect upon an actual and existing controversy. *Stell*, 92 P.3d at 914. Ripeness tests whether the issue is real, immediate, and fit for adjudication. *Beauprez v. Avalos*, 42 P.3d 642, 648 (Colo.2002). Courts should refuse to consider uncertain or contingent future matters that suppose speculative injury that may never occur. *Stell*, 92 P.3d at 914.

In some instances, the Colorado Constitution or the General Assembly affords a means for determining legal disputes that a court might not otherwise consider. One example is the interrogatory provision of the Colorado Constitution, Article VI, section 3, which authorizes our Court alone to "give its opinion upon important questions upon solemn occasions when required by the governor, the senate, or the house of representatives." *See Submission of Interrogatories on Senate Bill 93–74*, 852 P.2d 1 (Colo.1993). Another example is the declaratory judgment statute, which authorizes district courts "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." § 13–51–102, C.R.S. (2004).

■ We underscore that these grants of authority do not require us to take cases that are not justiciable. Rather, they empower us to take additional types of justiciable cases. However, when a court exercises its interrogatory or declaratory judgment authority in a case, it must focus on a real set of facts involving an immediate controversy fit for judicial resolution.

For instance, in exercising our authority to decline non-justiciable cases, we do not answer questions propounded by the Governor regarding the constitutionality of a proposed legislative bill that has not been introduced and may never be passed. *In re Interrogatories by Governor*, 71 Colo. 331, 332, 206 P. 383, 383 (1922) (answering the question "would establish a precedent which would require us to pass upon the constitutionality of all important legislation before presented to the lawmaking body"). Likewise, a declaratory judgment "calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present rights upon established facts." *Cacioppo v. Eagle County Sch. Dist. Re–50J*, 92 P.3d 453, 467 (Colo.2004) (citation omitted). A court should exercise jurisdiction in such actions "only if the case contains a currently justiciable issue or an existing legal controversy, rather than the mere possibility of a future claim." *Id.*

## B. District Court Jurisdiction under Section 32–4–540

■ We now turn to the General Assembly's intent in enacting section 32–4–540 of the water and sanitation district statutes. In doing so, we are guided by the rubric that the legislature intends a statute to be constitutional and we should construe it in a manner avoiding constitutional infirmity, if possible. *See People v. M.B.*, 90 P.3d 880, 881 (Colo.2004) (if statute can be construed in a manner that adheres to constitutional requirements, we must adopt that construction). An act requiring us to render an advisory opinion on a non-justiciable issue of law would impermissibly intrude on the judiciary's role in the separation of powers.

In determining the legislature's intent, we look first to the language of the statute and apply its plain and ordinary meaning, if possible. *Davison v. Indus. Claim Appeals Office*, 84 P.3d 1023, 1029 (Colo.2004). We read the statutory provision as a whole and construe its terms harmoniously when we can, reconciling conflicts if necessary. *Colorado Dep't of Labor & Employment v. Esser*, 30 P.3d 189, 195 (Colo. 2001). Section 32–4–540 provides a mechanism for water and sanitation districts to bring questions important to the exercise of their authority and statutory purposes to a district court for review:

> (1)(a) In its discretion, the board may file a petition at any time in the district court in and for any county in which the district is located wholly or in part, praying for a *judicial examination and determination of any* power conferred or of any tax or rates or charges levied, or of any act, proceeding, or *contract* of the district, *whether or not said contract has been executed, including proposed contracts for the acquisition, improvement, equipment, maintenance, operation, or disposal of any project for the district.* Such petition shall *set forth the facts whereon the validity of such* power, assessment, act, proceeding, or *contract is founded* and shall be verified by the chairman of the board.
> (b) Such action shall be in the nature of a proceeding in rem, and jurisdiction of all parties interested may be had by publication and posting.

(emphasis added).

In instituting the case now before us, Metro relied upon the broad language "judicial examination and determination ... of any ... contract ... whether or not said contract has been executed." Yet, we cannot view these words in isolation from the rest of the language of the statute and the evident intent of the legislature. Reading the statute as a whole, we find that the water and sanitation district's special statutory procedures are geared to questions concerning the district's powers and the validity of certain actions the district has taken or proposes to take in the exercise of its statutory authority. The statute focuses on important, concrete, and immediate issues requiring judicial resolution so that the district may proceed with the public business the legislature has assigned to it.[2]

Within this context, the "contract" and "proposed contracts" language of the statute permits a district court to address a particular contract or proposed contract in order to determine whether the district has validly entered into it or may enter into it. The evident legislative intent is to promote security and reliability for the investment of public funds from tax levies, user fees, or bond proceeds in the course of activities involving the district's public works function and projects.

Just as the statute provides discretion to the district board to bring a question to the district court, it preserves the authority of Colorado courts to decline to answer questions that are not justiciable. Metro's petition asked the district court to assume a future dispute involving the interpretation, application, and enforcement of a particular provision of a proposed insurance policy. We do not ascertain in the General Assembly's choice of words any intent to provide a water and sanitation district with the opportunity to obtain an advisory opinion that Colorado courts would correctly refuse to give to others.

Through its petition here, Metro sought an answer to a not-yet-ripe insurance question. If this were the statute's proper function, Metro could theoretically present a menu of questions for a district court to answer. However, the legislature did not intend section 32–4–540 to override the constitutional authority of Colorado courts to decline the exercise of jurisdiction in a non-justiciable case. *See In re Interrogatories Propounded by the Senate Concerning House Bill 456,* 131 Colo. 389, 281 P.2d 1013 (Colo.1955) (despite importance of questions presented and despite constitutional language suggesting that exercise of the interrogatory jurisdiction might be mandatory for the supreme court,

---

**2.** Water and sanitation districts have a very important public function in the protection of Colo-rado water quality. *See Krupp v. Breckenridge Sanitation Dist.,* 19 P.3d 687 (Colo.2001).

we declined to answer based on separation of powers concerns and judicial restraint); *Cacioppo*, 92 P.3d at 467 (declining to give declaratory judgment because of justiciability concerns).

As occurred in *Friedland*, announced today, courts anchor the resolution of insurance coverage issues on the rock of real disputes between insureds and insurers. Application of the notice-prejudice rule itself turns on specific facts of an insured's delay and prejudice to an insurer, facts that are absent here.

The hypothetical issue presented to the district court in this case was not ripe for resolution. The district court should have dismissed the district's petition.

### III.

Accordingly, we vacate the district court's judgment and dismiss this case.