The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
May 16, 2019

## 2019COA74

**No. 16CA2176, *People v. Trujillo* — Crimes — Offenses Involving Family Relations — Domestic Violence — Domestic Violence Treatment Programs**

A division of the court of appeals addresses the issue whether

a defendant sentenced to jail can also be required to complete a

domestic violence treatment program under section 18-6-801(1)(a),

C.R.S. 2018. The division first concludes that section

18-6-801(1)(a) provides a general rule: a trial court must, in

addition to any sentence that it may impose, order a defendant who

has committed a crime of domestic violence to complete a domestic

violence treatment program. But, second, section 18-6-801(2)

provides an exception to the general rule: if the court sentences a

defendant to prison, it cannot order the defendant to complete a domestic violence treatment program.

The division concludes that, because the trial court in this case sentenced defendant to jail, the exception in section 18-6-801(2) does not apply. As a result, the trial court properly denied defendant's Crim. P. 35(a) motion.

COLORADO COURT OF APPEALS 2019COA74

---

Court of Appeals No. 16CA2176
Pueblo County District Court No. 14CR2131
Honorable Larry C. Schwartz, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Mario Trujillo,

Defendant-Appellant.

---

ORDER AFFIRMED

Division V
Opinion by CHIEF JUDGE BERNARD
Pawar and Davidson*, JJ., concur

Announced May 16, 2019

---

Philip J. Weiser, Attorney General, Brock J. Swanson, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Denver, Colorado, Alex San Filippo-Rosser, Deputy State Public Defender, Pueblo, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2018.

¶ 1      This appeal calls on us to decide whether an express exception to a general statutory rule applies to an arguably related circumstance that is not mentioned in the exception.

¶ 2      The general rule appears in section 18-6-801(1)(a), C.R.S. 2018.  This subsection (1)(a), which addresses crimes that include acts of domestic violence, requires a court to order a defendant who has committed such a crime to "complete a treatment program and a treatment evaluation that conform with the standards adopted by the domestic violence offender management board."

¶ 3      The exception appears in section 18-6-801(2).  This subsection (2) states that the requirements of subsection (1) "shall not apply to persons sentenced to the department of corrections."  In other words, a court that has sentenced a defendant to prison for a domestic violence crime cannot order him to complete a treatment program as described in subsection (1).

¶ 4      The question we must answer in this appeal is: Does the exception in subsection (2) prevent a court from ordering a defendant to complete a treatment program if the court has sentenced the defendant to jail?  We answer that question "no."  We conclude, because of the reasons that we explain below, that

subsection (1)(a) applies to all sentences except for prison sentences.

¶ 5     In this case, the trial court imposed a two-year jail sentence on defendant, Mario Trujillo, for a misdemeanor involving domestic violence. The court also ordered him to complete a certified domestic violence treatment program. He appeals. We affirm.

I.    Background

¶ 6     The prosecution originally charged defendant with third degree assault, menacing, harassment, being a domestic violence habitual offender, and obstruction of telephone service. It also alleged that the facts of the case met the definition of domestic violence in section 18-6-800.3, C.R.S. 2018.

¶ 7     Defendant agreed to plead guilty to third degree assault. Under the plea agreement, he stipulated that the crime involved an act of domestic violence, that the court would sentence him to two years in jail, and that he would complete "a court certified domestic violence treatment and/or education program."

¶ 8     The trial court accepted defendant's plea. It then sentenced him to two years in jail, which was the maximum possible jail sentence; it ordered him to complete a domestic violence treatment

2

program; and it set a review hearing for a year later to determine whether he had complied with the treatment order.

¶ 9 Defendant then filed a Crim. P. 35(a) motion, which alleged that the treatment order was illegal and asked the trial court to vacate it. The court held a hearing on the motion. Relying, in part, on section 18-6-801(1)(a), the court decided that it had the authority to enter the treatment order because the order was "in addition to," not part of, defendant's sentence.

¶ 10 The court then offered to set a review hearing. Defendant objected, arguing that the court did not have the authority to set further review hearings because they would be "akin to some sort of probationary sentence." He added that the prosecution could "initiate proceedings" for contempt, but the court did not have "the authority to order [him] to appear . . . when no contempt proceeding [was] ongoing." The court agreed, and it set an internal review as a presumptive deadline for defendant to file some proof of his enrollment in a treatment program. The court then noted that it would be, at that point, "up to the [prosecution] to take any action" if he had not completed the program.

## II. Subsection (1)(a)'s Plain Language Requires the Trial Court to Order Domestic Violence Treatment

¶ 11     Defendant contends that the legislature did not intend for the general rule in subsection (1)(a) to apply to jail sentences.  We disagree.

### A.     Standard of Review and Statutory Interpretation Principles

¶ 12     This appeal requires us to interpret statutes.  We review such issues de novo.  *People v. Ortiz*, 2016 COA 58, ¶ 15.

¶ 13     When we interpret statutes, we must ascertain and give effect to the legislature's intent.  *Colo. Dep't of Revenue v. Creager Mercantile Co.*, 2017 CO 41M, ¶ 16.  In doing so, "[w]e give effect to words and phrases according to their plain and ordinary meaning[s]."  *Denver Post Corp. v. Ritter*, 255 P.3d 1083, 1089 (Colo. 2011).  And "we will not interpret a statute to mean that which it does not express."  *Carruthers v. Carrier Access Corp.*, 251 P.3d 1199, 1204 (Colo. App. 2010).

¶ 14     If a statute's language is clear, we apply it as the legislature wrote it.  *Denver Post Corp.*, 255 P.3d at 1089.  We "must read and consider the statutory scheme as a whole to give consistent, harmonious and sensible effect to all its parts."  *Charnes v. Boom,*

766 P.2d 665, 667 (Colo. 1988).  "In interpreting a comprehensive legislative scheme, we must construe each provision to further the overall legislative intent behind the statutes."  *Martin v. People*, 27 P.3d 846, 851-52 (Colo. 2001).  And, "when interpreting more than one statute, we will favor a construction that avoids potential conflict between the relevant provisions."  *People v. Smith*, 971 P.2d 1056, 1058 (Colo. 1999).

## B.    Crim. P. 35(a) versus Crim. P. 35(c)

¶ 15    The prosecution contends that defendant rode the wrong horse — Crim. P. 35(a) — to the courthouse; he should have relied on Crim. P. 35(c) instead.  Crim. P. 35(a) provides that a "court may correct a sentence that was not authorized by law or that was imposed without jurisdiction at any time . . . ."  Crim. P. 35(c) is "the proper postconviction route in which to challenge . . . sentences as unconstitutional."  *People v. Collier*, 151 P.3d 668, 670 (Colo. App. 2006).  And a defendant may assert that a court "rendering judgment was without jurisdiction over . . . the subject matter" in a Crim. P. 35(c) motion.  Crim. P. 35(c)(2)(III).

¶ 16    The prosecution supports its contention by asserting that the treatment order was not part of defendant's sentence.  We agree.

5

¶ 17    In subsection (1)(a), the legislature characterized a treatment order as something other than a sentence.  Section 18-6-801(1)(a) states that, "*[i]n addition to* any sentence" imposed, the trial court "shall" order the defendant to "complete a treatment program." (Emphasis added.)

¶ 18    Plus, domestic violence treatment, as contemplated by subsection (1)(a), "is not a form of punishment," and subsection (1)(a) "does not mandate a 'penalty.'"  *People v. Heisler*, 2017 COA 58, ¶ 45; *see Allen v. People*, 2013 CO 44, ¶ 7 ("Unlike a criminal sentence, the [sexually violent predator] designation is not punishment. . . .  [A] trial court's decision to designate an offender as [a sexually violent predator] is legally and practically distinct from its sentencing function.").

¶ 19    We therefore conclude that the contentions defendant raises on appeal are cognizable under Crim. P. 35(c) instead of under Crim. P. 35(a).  But, as the prosecution concedes, we must nonetheless address the merits of these contentions because defendant timely filed his motion.

## C.  Analysis

¶ 20    Section 18-6-801(1)(a) provides that, "[i]n addition to any sentence" imposed, the trial court "shall" order the defendant to "complete a treatment program."  Subsection (2) provides that the provisions of subsection (1)(a) do "not apply to persons sentenced to the department of corrections."  When we read these two subsections together, we conclude that they are clear and unambiguous.

¶ 21    The legislature's use of the word "shall" requires the trial court to order a defendant convicted of a domestic violence crime to complete a treatment program.  *See People v. Dist. Court*, 713 P.2d 918, 921 (Colo. 1986)("[T]he use of the word 'shall' in a statute is usually deemed to involve a mandatory connotation.").  The use of the word "any" means that the statute applies to all sentences.  *See Stamp v. Vail Corp.*, 172 P.3d 437, 447 (Colo. 2007)("When used as an adjective in a statute, the word 'any' means 'all.'").

¶ 22    The legislature provided a single, explicit exception in subsection (2): if the trial court sentences a defendant to prison, it cannot also order him to complete a treatment program.  *See Partners in Change, L.L.C. v. Philp*, 197 P.3d 232, 235-36 (Colo.

App. 2008)("[W]hen the General Assembly intended to exempt certain domestic violence offenders from treatment . . . it did so expressly" in subsection (2).); *People v. Torres*, 141 P.3d 931, 937 (Colo. App. 2006)(noting that the trial court could not order treatment because it sentenced the defendant to prison).  Generally, we interpret the legislature's "inclusion of a single, specific, narrow exception to mean that the [legislature] intended that there be no other exceptions to the rule." *Cain v. People*, 2014 CO 49, ¶ 13.

¶ 23    The trial court sentenced defendant to jail, not to prison.  Jail and prison are decidedly different.  Prison "has long been recognized as the proper place for the incarceration of those convicted of the graver offenses[,] . . . while county jails have been utilized for the confinement of those convicted of minor offenses." *Brooks v. People*, 14 Colo. 413, 414, 24 P. 553, 553 (1890).

¶ 24    Because the court sentenced defendant to jail instead of prison, we reject his assertion that subsection (1)(a) did not require the court to order him to complete a treatment program.  To agree with him would be to "create an exception to a statute that the plain meaning does not suggest or demand." *A.C. v. People*, 16 P.3d 240, 243 (Colo. 2001).

8

¶ 25     When defendant pled guilty to third degree assault, he stipulated that (1) the offense involved domestic violence; (2) he would be incarcerated in a jail for two years; and (3) he would participate in a certified domestic violence treatment program.  His plea and the three stipulations accompanying it triggered the requirements of subsection (1)(a).  We therefore reject his assertion that subsection(1)(a) did not require the trial court to issue the treatment order.

¶ 26     We are not otherwise persuaded by defendant's contention that section 16-11.8-103(4)(a)(II), C.R.S. 2018, modifies subsection (1)(a) to exclude jail sentences from the treatment requirement.  This assertion begins by pointing to additional language in section 18-6-801(1)(a), which declares that a defendant must complete a treatment program that "conform[s] with the standards adopted by the domestic violence offender management board as required by section 16-11.8-103(4)."  Section 16-11.8-103(4)(a)(II), defendant continues, decrees that the domestic violence treatment board shall adopt treatment programs for "offenders . . . who are placed on probation, placed on parole, or placed in community corrections or who receive a deferred judgment and sentence."  This statute does

not, defendant wraps up, refer to offenders whom courts have sentenced to jail.

¶ 27    But "we must avoid statutory constructions that render statutory provisions a nullity," *People v. Morales*, 2012 COA 2, ¶ 60, and constructions that would create "potential conflict between the relevant provisions" that does not necessarily exist, *see Smith*, 971 P.2d at 1058.  We conclude, for the following reasons, that defendant's contention would render the general rule found in subsection (1)(a) a nullity and that it would create a conflict between subsection (1)(a) and section 16-11.8-103(4)(a)(II) that does not exist.

1. The language of section 16-11.8-103(4)(a)(II) on which defendant relies only addresses a duty of the domestic violence offender management board; it does not address the authority of courts.

2. Section 16-11.8-103(4)(a)(II) does not refer to the court's obligation in section 18-6-801(1)(a) to order defendants to participate in treatment programs, and it does not incorporate or add to the exception to the general rule in section 18-6-801(2).

3. Defendant's contention omits additional language in section 16-11.8-103(4)(a)(II), which mandates that "the programs shall be developed in such a manner that, to the extent possible, [they] may be accessed by *all* offenders in the criminal justice system." (Emphasis added.) An offender whom a court has sentenced to jail falls within the broad class of *all* the offenders in the criminal justice system.

4. Section 18-6-801(1)(c) states that "[n]othing in this subsection (1) shall preclude the court from ordering domestic violence treatment in *any* appropriate case." (Emphasis added.) This language reinforces the general rule in subsection (1)(a).

5. Although section 16-11.8-103(4)(a)(II) requires the board to adopt guidelines and standards for use in treatment programs, it does not declare that such programs are only available to defendants whom courts have "placed on probation, placed on parole, or placed in community corrections or who receive a deferred judgment and sentence." Rather, the guidelines and standards "shall"

11

apply to those individuals, but they need not *only* apply to them.

### III.    Defendant's Other Contentions

¶ 28    Defendant raises three other attacks on the treatment order. We review these contentions de novo. *See People v. Davis*, 2012 COA 14, ¶ 6.

### A.    Court Probation

¶ 29    Defendant submits that the trial court placed him on something called "court probation" when it entered the treatment order because he would have to complete his treatment after his jail term. "Court probation" is a form of probation "in which the offender . . . reports only to the sentencing judge rather than [to] a probation officer." Black's Law Dictionary 1396 (10th ed. 2014). We conclude that this contention mischaracterizes what the court did.

¶ 30    Generally, a court cannot sentence a defendant to both jail and to probation because probation is considered an alternative to imprisonment. *See Faulkner v. Dist. Court,* 826 P.2d 1277, 1279 (Colo. 1992). A court can order a defendant to serve jail time as a condition of probation, but, in such a case, a defendant convicted of

a misdemeanor can spend no more than sixty days in jail.

§ 18-1.3-202(1)(a), C.R.S. 2018.

¶ 31    Probation is a "form of sentence." *People v. Turner*, 644 P.2d 951, 953 (Colo. 1982); *accord People v. Anderson*, 2015 COA 12, ¶ 14 ("Probation is one of the sentencing alternatives available to a court when entering a judgment of conviction."). But, as we have already concluded, an order requiring a defendant to complete domestic violence treatment is not a sentence because it is neither punishment nor penalty. § 18-6-801(1)(a) (a court orders domestic violence treatment "[i]n addition to" the sentence); *Allen*, ¶ 7; *Heisler*, ¶ 45.

¶ 32    And the trial court did not require defendant to "report" back to it after the Crim. P. 35(a) hearing. Recall that the court intended to set a review hearing after denying defendant's motion. But, after defendant objected, the court decided that it would not set such a hearing, which meant that it did not have a supervisory role in ensuring that defendant completed domestic violence treatment.

## B.    Jurisdiction

¶ 33    Defendant next contends that the court could not enter the treatment order because it lost jurisdiction over him after he had finished his jail sentence. We disagree.

¶ 34    "A trial court loses jurisdiction upon imposition of a valid sentence except under the circumstances specified in Crim. P. 35." *People v. Wiedemer*, 692 P.2d 327, 329 (Colo. App. 1984). But the court issued the order during the sentencing hearing, when it clearly had jurisdiction over defendant. The law clearly authorized this process.

## C.    Contempt Proceeding

¶ 35    Defendant asserts that the trial court could not enforce the treatment order through a contempt proceeding because, by doing so, any additional jail time that the court might impose would result in a sentence exceeding the maximum penalty for third degree assault. The prosecution counters by maintaining that this issue is not ripe. We agree with the prosecution.

¶ 36    "Ripeness tests whether the issue is real, immediate, and fit for adjudication." *Bd. of Dirs., Metro Wastewater Reclamation Dist. v. Nat'l Union Fire Ins. Co.*, 105 P.3d 653, 656 (Colo. 2005). "Courts

14

should refuse to consider uncertain or contingent future matters that suppose speculative injury that may never occur." *Id.*

¶ 37 The record does not contain any information indicating that defendant has refused to comply with the treatment order, that the prosecution has asked the trial court to issue a contempt citation, that the court has held a contempt hearing, or that the court punished defendant's putative contempt by imposing a jail sentence. As a result, (1) the issue whether contempt is an appropriate enforcement mechanism has not been presented in this case in the context of an existing contempt proceeding; (2) the question whether the court will hold a contempt hearing is presently uncertain; (3) such a hearing would be contingent on an unknown, which is whether defendant has complied with the treatment order; and (4) the putative injury to which defendant points — incarceration for contempt — is, as of now, speculative and may never occur.

¶ 38 We therefore conclude that this issue is not ripe, *see id.*, so we will not address it.

¶ 39 The order is affirmed.

JUDGE PAWAR and JUDGE DAVIDSON concur.

15