DEVELOPMENTAL PATHWAYS, a Colorado not-for-profit corporation; Edward H. Stammel, an individual; Norma Anderson, an individual; Virginia Buczek, an individual; Douglas Abraham, an individual; Adams County Economic Development, Inc., a Colorado not-for-profit corporation; Susan K. Rusch, an individual; Ann L. McGihon, an individual; and Daniel E. Williams, an individual, David Getches, an individual, and Frank Weddig, an individual, Plaintiffs–Appellees

v.

Bill RITTER, as Governor of the State of Colorado, Defendant–Appellant.

No. 07SA181.

Supreme Court of Colorado,
En Banc.

Feb. 25, 2008.

Rehearing Denied March 24, 2008.

John W. Suthers, Attorney General, Maurice G. Knaizer, Deputy Attorney General, Denver, Colorado, Attorneys for Defendant–Appellant.

Fairfield and Woods, P.C., Douglas J. Friednash, John M. Tanner, Susan F. Fisher, Denver, Colorado, Jean E. Dubofsky, P.C., Jean E. Dubofsky, Boulder, Colorado, Attorneys for Plaintiffs–Appellees.

Kelly Garnsey Hubbell & Lass LLC, Martha M. Tierney, Denver, Colorado, Attorneys for Amicus Curiae Colorado Common Cause.

Chief Justice MULLARKEY delivered the Opinion of the Court.

## I. Introduction

This case involves a constitutional challenge to the gift ban provisions in Amendment 41 of the Colorado Constitution ("Amendment 41"), now codified as Colo. Const. art. XXIX. Amendment 41, entitled "Ethics in Government," was an initiative enacted by the Colorado voters in November 2006. The Plaintiffs–Appellees are a combination of individuals and entities covered under the Amendment, including a lobbyist, a legislator, a county commissioner, a university professor, an appointed board member for a statutory city, non-profit organizations, and government employees and their families. For purposes of this opinion, they will be referred to collectively as "Plaintiffs."

Bringing a suit against Governor Ritter in Denver District Court, Plaintiffs challenged the gift bans in section 3 of Amendment 41 as being overbroad and vague, and thus violating their First Amendment rights to free speech, free association, and petition. The district court agreed, finding that the bans impermissibly chilled Plaintiffs' First Amendment rights, and so preliminarily enjoined the enforcement of these gift ban provisions. Governor Ritter appealed this injunction under C.A.R. 1(a)(3), and we granted review. The issues on appeal are: 1) whether Amendment 41 is self-executing prior to the appointment of the Ethics Commission created by the Amendment and the enactment of rules by the Commission; 2) whether Governor Ritter is a proper party defendant; 3) whether the gift limitations apply only to gifts given or received for private gain or personal financial gain in violation of the public trust; and 4) whether sections 2 and 3 of Amendment 41 violate the rights of speech, association, and petition.

While we hold that Governor Ritter is a proper party defendant to this action and that Amendment 41 is self-executing, we find that Plaintiffs did not present a ripe as-applied constitutional challenge. Because Plaintiffs failed to meet the justiciability requirements necessary for a court to hear the case, we hold that the Denver District Court did not have the jurisdiction to grant a pre-liminary injunction. Although we agree with the district court's ruling on the proper party and self-execution issues, we reverse the order of the district court on the ground of ripeness and direct the court to vacate the injunction. We do not reach the merits of the constitutional challenge.

## II. Facts and Procedural History

### A. The Provisions of Amendment 41 and Senate Bill 07–210

We begin by briefly summarizing the relevant provisions of Amendment 41. Section 1 sets forth the purposes of the Amendment, as well as the factual findings supporting those purposes. It emphasizes that "[t]he conduct of public officers, members of the General Assembly, local government officials, and government employees must hold the respect and confidence of the people." Colo. Const. art. XXIX, § 1(1)(a). Moreover, these government employees must "carry out their duties for the benefit of the people of the State." *Id.* at § 1(1)(b). To achieve these stated goals, these employees should "avoid conduct that is in violation of their public trust or that creates a justifiable impression among members of the public that such trust is being violated." *Id.* at § 1(1)(c). The section then states that it is a violation of the public trust to "realize personal financial gain through public office" and notes that there must be both specific standards to ensure the propriety of government employees' conduct and a penalty mechanism for enforcement of those standards. *Id.* at § 1(1)(d), (e).

Section 2 defines various terms in the Amendment, particularly identifying those persons to whom its provisions apply. *Id.* at § 2. This section, however, does not define "public trust" or "private gain," terms used in the purpose section of the Amendment. The Governor relies on these terms in arguing that the Amendment's gift ban provisions are not overly broad or vague, as Plaintiffs allege, because the provisions must be read in conjunction with the purposes of the Amendment.

As specified in sections 2 and 3, the Amendment covers employees of the legislative and executive branches, as well as public

officers, employees of state agencies and public institutions of higher education, independent contractors of the state, and local government officials. *Id.* at §§ 2–3.[1] Subsection 2(6) specifically excludes judicial officers and employees from coverage under the Amendment. *Id.* at § 2(6).

Section 3 of Amendment 41 is at the heart of this constitutional challenge. This section establishes two distinct gift bans: the "fifty-dollar ban" and the "zero-dollar ban." The fifty-dollar ban provides that covered government officials and employees may not:

> either directly or indirectly as the beneficiary of a gift or thing of value given to such person's spouse or dependent child ... solicit, accept, or receive any gift or other thing of value having either a fair market value or aggregate actual cost greater than fifty dollars ($50) in any calendar year ... from a person, without the person receiving lawful consideration of equal or greater value in return from the [covered employee or official].

*Id.* at § 3(2). The provision delineates a non-exclusive list of possible gifts, loans, favors, honoraria, and special discounts that would fall within this ban. *Id.* Moreover, a covered person cannot accept or receive "money, forbearance, or forgiveness of indebtedness" without providing "lawful consideration of equal or greater value." *Id.* at § 3(1). Subsection 3(3) lists numerous exceptions to the limitations, such as for campaign contributions, unsolicited items of trivial value, unsolicited informational material, the cost of food and admission for an event at which the recipient is scheduled to speak, gifts given by a relative or personal friend on a special occasion, and typical compensation for employment. *Id.* at § 3(3).

A second gift limitation provision, the zero-dollar ban, prohibits any lobbyist from either giving a "thing of value" to a covered individual or knowingly paying for a meal or beverage to be consumed by such a covered person. *Id.* at § 3(4). The provision specifically states that the limitation applies to both a lobbyist's business and personal events. *Id.*

Section 5 creates an independent ethics commission ("the Commission") for the purposes of "hear[ing] complaints, issu[ing] findings, and assess[ing] penalties," as well as "issu[ing] advisory opinions, on ethics issues arising under this article and under any other standards of conduct and reporting requirements as provided by law." *Id.* at § 5(1). The Commission has the power to adopt rules for the administration and enforcement of the Amendment. *Id.* Section 5 also establishes the appointment process and term limits for members of the Commission. *Id.*[2]

In addition, subsection 5(3) describes the general process of filing an ethics complaint. *Id.* at § 5(3). Under this provision, any person can file a written complaint based on actions taken by a covered individual within the preceding twelve months. *Id.* at § 5(3)(a). The Commission will then "conduct an investigation, hold a public hearing, and render findings ... pursuant to written rules adopted by the Commission." *Id.* at § 5(3)(c).

Section 6 discusses the penalty for violating the gift ban provisions, stating that any covered individual "who breaches the public trust for private gain" is liable for double the financial equivalent of any benefit received. *Id.* at § 6. The section also provides: "The

---

1. A "government employee" is defined as "any employee, including independent contractors, of the state executive branch, the state legislative branch, a state agency, a public institution of higher education, or any local government." Colo. Const. art. XXIX, § 2. A "public officer" is "any elected officer, including all statewide elected officeholders, the head of any department of the executive branch, and elected and appointed members of the state boards and commissions." *Id.* The section defines the term "local government official" to include elected or appointed officials of local government. *Id.*

2. Subsection 5(2) of Amendment 41 delineates the complicated process of creating the Commission. The first four members of the Commission are appointed in order by the Colorado Senate, the Colorado House of Representatives, the Governor, and the Chief Justice of the Colorado Supreme Court. Colo. Const. art. XXIX, § 5(2)(a)(I)-(IV). Then, the fifth member, either a local government official or a local government employee, must be "appointed by the affirmative vote of at least three of the four [previously appointed] members." *Id.* at § 5(2)(a)(V).

manner of recovery and additional penalties may be provided by law." *Id.*

Finally, section 9 addresses facilitating legislation, stating that "[l]egislation may be enacted to facilitate the operation of this article, but in no way shall such legislation limit or restrict the provisions of this article or the powers herein granted." *Id.* at § 9.

In April 2007, Senate Bill 07–210 ("S.B. 07–210") was adopted by the General Assembly and approved by the Governor as a piece of implementing legislation for Amendment 41. *See* § 24–18.5–101, C.R.S. (2007). In addition to detailing the appointment process and duties of the Commission, as well as appropriating funding for its existence, S.B. 07–210 states that the Commission "shall dismiss as frivolous any complaint filed under article XXIX that fails to allege that a [covered individual] has accepted or received any gift or other thing of value *for private gain or personal financial gain*." § 24–18.5–101(2)–(5) (emphasis added). The statute then defines "private gain" or "personal financial gain" as:

> any money, forbearance, forgiveness of indebtedness, gift, or other thing of value given or offered by a person seeking to influence an official act that is performed in the course and scope of the public duties of a public officer, member of the General Assembly, local government official, or government employee.

§ 24–18.5–101(5)(b)(II).

## B. The Alleged Impact of Amendment 41 and The District Court's Findings

In February 2007, Plaintiffs filed a complaint in Denver District Court, alleging that the gift bans in Amendment 41 were overbroad and vague, thus violating their constitutional rights to speech, association, and petition. These challenges are based on Plaintiffs' assertion that the Amendment prohibits the receipt of any thing of value over the specified dollar amount, and not simply those gifts given in an attempt to influence an official act or in violation of the public trust. Governor Ritter moved to dismiss the case, arguing that Amendment 41 was not self-executing and that he was not the proper

defendant in the case. The district court denied the motion.

Governor Ritter then filed a second motion to dismiss, as well as a motion in limine, in response to Plaintiffs' motion for a preliminary injunction. The Governor's second motion was based on his contention that the enactment of S.B. 07–210 mooted the case by confirming the existence of a nexus between the gift ban provisions and the receipt of gifts in violation of the public trust for private gain, thus negating Plaintiffs' constitutional challenges of overbreadth and vagueness. In the alternative, the Governor sought to preclude the introduction of any evidence that was not related to gifts or other things of value given or accepted for the purpose of influencing official actions. The court denied the motion in limine and held a hearing on Plaintiffs' preliminary injunction motion in May 2007.

At the hearing, Plaintiffs presented testimony from numerous witnesses, including legislators, lobbyists, government employees, and others covered by Amendment 41's gift bans. The witnesses spoke about their interpretations of how Amendment 41 affects them and chills their exercise of First Amendment rights.

First, legislators testified that Amendment 41 has limited the access that lobbyists and individual citizens have to them. The legislators explained that they are dependent on receiving information on proposed bills from lobbyists, particularly in light of their voluminous workloads and their limited resources. In their view, information in today's society has value, both from the process required to generate it and from the resulting information itself. Because the zero-dollar ban under section 3(4) of the Amendment prevents professional lobbyists from giving anything of value to legislators, legislators now worry that they will no longer receive the necessary information.

Moreover, lobbyists testified that their opportunities to meet with legislators have decreased substantially since the passage of Amendment 41. In the past, lobbying has often taken place at social events, such as meetings, lunches, and receptions. As a re-

sult of Amendment 41's passage, lobbyists and legislators claim that they avoid having coffee or lunch together, even if each person pays for his or her own meal, for fear that someone might see them together, assume that the lobbyist paid for the legislator's meal, and subsequently file a complaint with the Commission.

Legislators also claim that their ability to meet with their constituents has declined. Daily breakfast buffets at the capitol, given by various interest groups, have been cancelled as a result of Amendment 41, as have various receptions, goodwill events, and fundraising dinners of non-profit organizations. Besides the alleged danger of creating the appearance of impropriety by engaging in such social gatherings, legislators claim that they cannot personally afford to pay for these events once their budget allotments are exhausted.

Plaintiffs further challenge the breadth of Amendment 41, particularly its application to all government employees and their families. State university professors allege that they can no longer attend conferences and seminars, vital to their academic disciplines, unless they can afford to pay for their own transportation, lodging, admission, and food.

In addition, government employees whose children receive college scholarships based on past performance believe that, as a result of Amendment 41, they are forced to choose between their jobs and their children's college educations. They interpret the gift bans as prohibiting their children from receiving a thing of value, i.e., a merit scholarship, without providing lawful consideration in return. Other government employees expressed concerns about their ability to seek or accept future employment, as well as their ability to receive or give gifts to family members—totaling more than fifty dollars annually—except on "special occasions." One employee even testified that she worried she would not be able to inherit from her partner, another state employee.

The district court found that the ambiguities of Amendment 41's language "have created confusion among those affected by [the Amendment]." It rejected the Governor's argument that Amendment 41 only prohibited those gifts that were accepted for private gain or personal financial gain in violation of the public trust. The court refused either to read into the Amendment a nexus between the penalty provision of section 6 and the gift bans of section 3, or to find that S.B. 07–210 created such a nexus. Because the court found that Amendment 41 violated the First Amendment rights of covered individuals and their families, it enjoined the enforcement of the gift bans. Under C.A.R. 1(a)(3), we agreed to hear the Governor's appeal. We now find that Governor Ritter is a proper party defendant in this case and that Amendment 41 is self-executing. We also conclude, however, that Plaintiffs have failed to assert a ripe as-applied constitutional challenge. Thus, we reverse the district court's order, because the case is not ripe for adjudication. Accordingly, we direct the district court to vacate the injunction.

## III. Analysis

### A. Governor Ritter Is a Proper Party Defendant

As a preliminary matter, we consider Governor Ritter's contention that he is not a proper party defendant because he cannot implement or enforce the provisions of Amendment 41. In light of the facts and circumstances of this case at the time it was filed, we conclude that the Governor was properly named as a defendant.

 Under article IV, section 2 of the Colorado Constitution, "[t]he supreme executive power of the state shall be vested in the governor, who shall take care that the laws be faithfully executed." Colorado has long recognized the practice of naming the governor, in his role as the state's chief executive, as the proper defendant in cases where a party seeks to "enjoin or mandate enforcement of a statute, regulation, ordinance, or policy." *See Ainscough v. Owens,* 90 P.3d 851, 858 (Colo.2004); *see generally Romer v. Evans,* 517 U.S. 620, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996) (suing the governor to challenge a voter-initiated constitutional amendment); *Morrissey v. State,* 951 P.2d 911 (Colo.1998) (same). An " 'official capacity suit' is 'merely another way of pleading an

action against the entity of which an officer is an agent.' " *Ainscough*, 90 P.3d at 858 (quoting *Oten v. Colo. Bd. of Soc. Servs.*, 738 P.2d 37, 40 (Colo.App.1987)). Indeed, "[f]or litigation purposes, the Governor is the embodiment of the state." *Id.*

The evaluation of whether a person or entity is a proper party in a lawsuit must be determined in light of the relevant facts and circumstances. At the time the current case was filed in February 2007, the members of the Commission had not yet been appointed. Although the Commission existed on paper, it had not yet come into being, and it had taken no action. There was no alternative entity for Plaintiffs to sue in order to challenge Amendment 41. The only appropriate state agent for litigation purposes was the Governor. As a personification of the state, the Governor was the proper party defendant in this suit at the time of its filing.

Had the Commission been in existence at the time this lawsuit was filed, we may have reached a different conclusion with regard to this issue. The Commission is central to Amendment 41. The Amendment makes clear that the Commission is to be an entity separate and distinct from the executive and legislative branches, vested with the authority to adopt its own rules for the purpose of administering and enforcing the Amendment's provisions. Colo. Const. art. XXIX, § 5(1). Prior to the Commission's creation, however, as well as its assumption of this role, the Governor is an appropriate party defendant in a constitutional challenge.[3] We therefore agree with the district court's ruling denying the Governor's motion to dismiss on this ground.

### B. Amendment 41 Is Self–Executing

We cannot consider the merits of this controversy unless the case is within our proper exercise of jurisdiction. *See Stell v. Boulder County Dep't of Soc. Servs.*, 92 P.3d 910, 914 (Colo.2004) (discussing justiciability). Governor Ritter asserts that it is not.

The question of justiciability centers on the separation of powers set forth in the Colorado Constitution, specifically the concept that "courts limit their exercise of judicial power through jurisprudential doctrines that include standing, mootness, and ripeness, to establish parameters for the principled exercise of judicial authority." *See Bd. of Dirs., Metro Wastewater Reclamation Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 105 P.3d 653, 656 (Colo.2005) ("*Nat'l Union*"). The doctrine of standing concerns a litigant's right to bring a cause of action. *Id.* The mootness doctrine prevents a court from deciding a case when there is no "actual or existing controversy." *Id.* Moreover, the doctrine of ripeness ensures that an issue is "real, immediate, and fit for adjudication." *Id.* These threshold justiciability requirements are based upon concepts of judicial restraint and efficiency. *See McCroskey v. Gustafson*, 638 P.2d 51, 54 (Colo.1981) (discussing considerations behind the standing doctrine). Indeed, "[a] court should exercise jurisdiction in such actions 'only if the case contains a currently justiciable issue or an existing legal controversy, rather than the mere possibility of a future claim.' " *Nat'l Union*, 105 P.3d at 656 (quoting *Cacioppo v. Eagle County Sch. Dist. Re–50J*, 92 P.3d 453, 467 (Colo.2004)).

The issue of whether a constitutional provision is self-executing is closely related to these justiciability requirements. When a provision is self-executing, it "affords the means of protecting the right given and of enforcing the duty imposed." *Colo. State Civil Serv. Employees Ass'n v. Love*, 167 Colo. 436, 444, 448 P.2d 624, 627 (1968). On the other hand, a challenge to a provision

---

3. In arguing that he is not a proper party in this case, Governor Ritter relies on *Illinois Press Ass'n v. Ryan*, 195 Ill.2d 63, 252 Ill.Dec. 700, 743 N.E.2d 568 (2001). In that case, the plaintiffs sued the governor, seeking a determination that an ethics provision in the Illinois Constitution required the ethics commission to conduct its proceedings in public. *Id.* The Illinois Supreme Court ultimately dismissed the case against the governor, finding that he was not a proper party to the action. *Id.*, 252 Ill.Dec. 700, 743 N.E.2d at 569–70. That case, however, can be distinguished from the case at hand on a variety of grounds, chief among them being that the legislative ethics commission in that case had already been established at the time the complaint was filed.

that is not self-executing fails to present a justiciable issue because the provision does not create a privately enforceable right. *Cf. Cornejo v. County of San Diego,* 504 F.3d 853, 856 (9th Cir.2007) (noting that a treaty must be self-executing for it to create a privately enforceable right of action). Considering both the language of the Amendment and the voters' intent in initiating it, we find that Amendment 41 is self-executing.

Previously, in *Davidson v. Sandstrom,* this court stated that "[a] constitutional provision is self-executing when the provision appears to take immediate effect and no further action by the legislature is required to implement the right given." 83 P.3d 648, 658 (Colo.2004). A provision is "not self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law." *Davis v. Burke,* 179 U.S. 399, 403, 21 S.Ct. 210, 45 L.Ed. 249 (1900). The focus of such a determination is on the intent behind the provision. *Davidson,* 83 P.3d at 658.

The *Davidson* case involved a constitutional amendment which allowed voters to alter the term limits on certain public offices. *Id.* Finding the amendment to be self-executing, this court explained that a provision can still be self-executing even if "further legislation may clarify or facilitate the execution of the provision." *Id.* Moreover, the court recognized a presumption in favor of self-execution, particularly with regard to voter-initiated amendments. *Id.* Because the *Davidson* court found no indication that Colorado voters intended to require any further legislative action with regard to that amendment, it held that the presumption in favor of self-execution was not overcome. *Id.*

 The question of self-execution is an individualized inquiry, dependent upon the particular provision at issue. Focusing on the intent behind a provision's enactment, we look to the language used and the object to be accomplished. *See Baker v. Bosworth,* 122 Colo. 356, 360, 222 P.2d 416, 418 (1950) (discussing self-execution evaluation).

For example, in *People ex rel. Clay v. Bradley,* this court found an amendment providing for the establishment of a state civil service commission to be self-executing. 66 Colo. 186, 189, 179 P. 871, 872 (1919). The provision at issue stated:

> Laws shall be made to enforce the provisions of this section and to establish a state civil service commission to consist of three members, who shall be appointed for overlapping terms by the Governor alone and who shall be of known devotion to the merit system.

*Id.* at 187, 179 P. at 871. The amendment also expressly specified that the section was self-executing. *Id.* Parties to the case argued that despite this express language, the amendment was not self-executing because it required the legislature to act and establish the commission. *Id.* at 187–88, 179 P. at 871. Rejecting that argument, this court interpreted the word "establish" in the above-cited provision to mean "to make firm or stable, not to create." *Id.* at 188, 179 P. at 871. It then explained that the Governor could follow the Amendment and appoint the commission on his own, leaving nothing for the legislature to do except to secure the commission by any means possible. *Id.* at 188–89, 179 P. at 872. Because the commission could exist without any action by the legislature, the court held that the amendment was self-executing. *Id.*

The case at hand requires a similar analysis of both language and intent. Governor Ritter argues that Amendment 41 is not in effect until the Commission is formed and passes rules governing the process of hearing ethics complaints and assessing penalties. The language and structure of Amendment 41 cause us to disagree and instead find the Amendment to be self-executing.

Although we cannot definitively know the subjective intent of the voters in approving Amendment 41, we look for guidance in the language of the Amendment and the Legislative Council's *Analysis of the 2006 Ballot Proposals* ("the Bluebook"). Many initiatives expressly state that they are self-executing. *See, e.g., In re Title, Ballot Title & Submission Clause, for 2007–2008, # 17,* 172 P.3d 871, 886 (Colo.2007) (attaching Environmental Conservation initiative, which included an express provision on self-execution);

Colo. Const. art. X, § 20(1) (enacted by initiative in 1992) (stating that all provisions of the Taxpayer's Bill of Rights are self-executing). Amendment 41, however, does not contain a self-executing clause among its provisions. This express omission is not dispositive, however; it is only one factor for consideration in the self-execution inquiry. Looking beyond this absence of express intent, we consider the nature of the Commission created by the Amendment.

One of the purposes of Amendment 41 is to ensure that those within its coverage "avoid conduct that is in violation of their public trust or that creates a justifiable impression among members of the public that such trust is being violated." Colo. Const. art. XXIX, § 1(c). Section 5 provides the means for accomplishing this purpose: the creation of an *"independent* ethics commission" (emphasis added). *See id.* at § 5. This Commission is to be separate and distinct from both the executive and legislative branches, presumably so that it can best evaluate the actions of the members of those branches.[4] The Commission alone shall "hear complaints, issue findings, and assess penalties...." *Id.* (discussing duties of the Commission). While the legislature must appropriate the necessary funds for the Commission, it is the Commission that has the "authority to adopt such reasonable rules as may be necessary for the purpose of administering and enforcing the provisions" of the Amendment. *Id.* Moreover, in its discussion of Amendment 41, the Bluebook—an informational pamphlet mailed to all registered voters—explained that under prior law, ethics complaints were heard by various boards and committees on

both the state and local levels, but that under Amendment 41, the Commission would have "jurisdiction over all state, county, and municipal officials and employees." The language of both the Amendment itself and of the Bluebook evinces an intent by Colorado voters to have the Commission interpret and enforce the Amendment's provisions, separate and distinct from the General Assembly.

In essence, Amendment 41 can take effect without any further action by the legislature. Its provisions do not merely lay out bare principles without any means of implementation; rather, the Amendment has a built-in mechanism for operation. It provides for the creation of the Commission that, once in existence, will be independent of the General Assembly and will promulgate the necessary rules to implement and enforce the gift bans and other ethical standards. The Amendment's provisions contain substantial detail regarding the Commission's authority, as well as the ethical standards which covered individuals must meet. As in *Davidson*, we do not find any indication that Colorado voters intended to require further legislative action with regard to Amendment 41. In fact, the nature of the Amendment suggests that the voters wanted to minimize legislative involvement. In this case, the presumption in favor of self-execution is not overcome.[5]

We find further support for our conclusion that Amendment 41 is self-executing by considering the nature of initiative amendments as a whole. Often referred to as "direct democracy," the use of initiatives to amend constitutions, such as in the case of Amendment 41, "allow[s] the public to bypass the

---

**4.** S.B. 07–210 states that the Commission is "established in the Office of Administrative Courts in the Department of Personnel." § 24–18.5–101(2)(a), C.R.S. (2007). This is purely for administrative purposes because the Commission must be placed somewhere, and it does not take away from the independent nature of the Commission.

**5.** As support for his argument that Amendment 41 is not self-executing, Governor Ritter urges us to follow the reasoning of the Florida Supreme Court in *St. John Medical Plans, Inc. v. Gutman,* 721 So.2d 717 (Fla.1998). In that case, the court ruled that the constitutional provision at issue was not self-executing. *Id.* at 719–20. The court explained, "The need for implementing leg-

islation is apparent based on the plain language of the provision, which states, 'The manner of recovery and additional damages may be provided by law.' Further, the section fails to provide necessary definitions nor does it set out any procedural guidelines." *Id.* Because Amendment 41 contains almost identical language in the penalties provision of section 6, the Governor argues that Amendment 41, like the Florida initiative, is not self-executing. Today, we decline to follow this approach, and instead rest our holding on the independent nature of the Commission, the significantly detailed language of the Amendment, and the overall intent of Colorado voters.

legislature and reserve[s] direct lawmaking power in the voters of the state." P.K. Jameson & Marsha Hosack, *Citizen Initiatives in Florida: An Analysis of Florida's Constitutional Initiative Process, Issues, and Alternatives,* 23 Fla. St. U.L.Rev. 417, 418 (1995). The powers of initiative and referendum initially developed out of a fear that state governments would be controlled by special interest groups. *Id.* at 421. Allowing the constitution to be amended by means of initiative permits voters essentially to remove the ballot provisions at issue "from the normal checks and balances of American government." *See* David B. Magleby, *Let the Voters Decide? An Assessment of the Initiative and Referendum Process,* 66 U. Colo. L.Rev. 13, 18 (1995) (discussing the development of the initiative and referendum powers). Constitutional initiatives can only be changed by "a subsequent vote of the people." *Id.* at 13.

■■■ The concepts of initiative power and self-execution are premised on a similar intent to remove certain provisions from the reach of the legislature. Voters pass amendments by initiative so as to avoid the normal legislative process. *See id.* at 18. Moreover, although a legislature may implement or facilitate a self-executing amendment, the amendment itself, if self-executing, is sufficient to establish a "means of protecting the right given and of enforcing the duty imposed." *See Colo. State Civil Serv. Employees Ass'n,* 167 Colo. at 444, 448 P.2d at 627. It requires no further legislative action in order to take effect. *See Davis,* 179 U.S. at 403, 21 S.Ct. 210. In describing the modern presumption that constitutional provisions are intended to be self-executing, the Florida Supreme Court explained that, without such a presumption, "the legislature would have the power to nullify the will of the people expressed in their constitution, . . . ." *Gray v. Bryant,* 125 So.2d 846, 851 (Fla.1960).

While not all voter-initiated amendments are self-executing, the nature of Amendment 41 indicates that it is. We focus our evaluation of this self-execution issue on the intent behind its enactment. *See Davidson,* 83 P.3d at 658. Here, the voters' intent to pass an amendment, which would not require further legislative action, is clear. They used the initiative process to avoid the possibility that the General Assembly would prevent them from establishing an independent commission that would enforce the gift bans against the General Assembly's members, as well as other government employees.

We note that, while Amendment 41 does not require further legislative action to execute it, the General Assembly can pass legislation, such as S.B. 07–210, to facilitate its provisions.[6] Section 9 provides for such legislation, but emphasizes that "in no way shall such legislation limit or restrict the provisions of this article or the powers herein granted." It is the Commission, not the legislature, which must ultimately administer and enforce Amendment 41.

Determining that Amendment 41 does not require any further action by the General Assembly to be effective, we hold that the Amendment is self-executing, and thus, we agree with this part of the district court's ruling on the motion to dismiss.

## C. The First Amendment Challenge Is Not Ripe for Review

While we recognize that Governor Ritter is a proper party defendant to this action and that Amendment 41 is self-executing, we hold that the district court did not have the jurisdiction to grant a preliminary injunction because Plaintiffs did not present a ripe as-applied constitutional challenge. Seeking a declaratory judgment in addition to injunctive relief, Plaintiffs argue that the gift ban provisions of Amendment 41 are unconstitutional as specifically applied to each of them due to the Amendment's chilling effect on their exercise of First Amendment rights. Because the Commission is not in existence and has not yet developed the means to enforce the gift bans, we find that this challenge fails to meet the requirements of ripeness.

■■■ Generally, with an as-applied challenge, the claimant is arguing that the provision at issue is unconstitutional not on

---

6. The validity of S.B. 07–210 is not before us, and we express no opinion on the statute.

its face, but "under the circumstances in which the [claimant] has acted or proposes to act." *Sanger v. Dennis,* 148 P.3d 404, 410 (Colo.App.2006). "The practical effect of holding a statute unconstitutional as applied is to prevent its future application in a similar context, but not to render it utterly inoperative. To achieve the latter result, the plaintiff must succeed in challenging the statute on its face." *Id.* (quoting *Ada v. Guam Soc'y of Obstetricians & Gynecologists,* 506 U.S. 1011, 1011, 113 S.Ct. 633, 121 L.Ed.2d 564 (1992) (Scalia, J., dissenting) ).

Despite Plaintiffs' claims to the contrary, the relief Plaintiffs seek is only available in a successful facial challenge, not an as-applied challenge. Plaintiffs sought to have the gift bans of Amendment 41 rendered unconstitutional, leaving only the provision creating the Commission, which, in their view, would then enforce existing ethics laws. A declaration that the bans are unconstitutional as applied, however, would only prevent them from being applied to covered individuals in a fashion similar to that alleged by the current Plaintiffs; it would not render them inoperative.

In order for Plaintiffs to obtain a declaration that the Amendment is unconstitutional as applied, there must be an actual application or at least a reasonable possibility of enforcement or threat of enforcement. *See Hill v. Thomas,* 973 P.2d 1246, 1248 n. 2 (Colo.1999) (finding that "as the statute had not yet been enforced, the trial court correctly ruled that the challenge was facial only"), *aff'd,* 530 U.S. 703, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000); *see also High Gear & Toke Shop v. Beacom,* 689 P.2d 624, 629 n. 4 (Colo.1984) (recognizing that plaintiffs had standing to allege infringements of their First Amendment rights where the record established that they had been threatened with enforcement of the statute and that such enforcement would cause them injury). Courts have repeatedly found that where a statute is not yet in effect, or where there

has yet to be any enforcement of its provisions, an as-applied challenge to the statute is not ripe for review. *See, e.g., Houston Ass'n of Alcoholic Beverage Permit Holders v. City of Houston,* 508 F.Supp.2d 576, 583–84 (S.D.Tex.2007) ("The Ordinance was not effective at the time of the hearing, thus an 'as-applied' challenge to the constitutionality of the Ordinance is not ripe."); *Ward v. County of Orange,* 55 F.Supp.2d 1325, 1334–35 (M.D.Fla.1999) (ruling that as-applied challenges to the county's Adult Entertainment Code were not ripe where the plaintiff had not yet applied for a license under the Code and no enforcement proceedings had been brought against him); *N.Y. Coal. of Recycling Enters., Inc. v. City of New York,* 158 Misc.2d 1, 598 N.Y.S.2d 649, 655 (Sup.Ct. 1992) (finding that an as-applied challenge was not ripe for review where the claims were dependent on regulations not yet adopted). We agree with this view.

 Under the doctrine of ripeness, a claim must be real and immediate. *Nat'l Union,* 105 P.3d at 656. With this requirement in mind, we must "refuse to consider uncertain or contingent future matters that suppose speculative injury that may never occur." *Id.* We determine ripeness on the basis of the situation at the time of review, not the situation existing when the trial court acted. *See Blanchette v. Conn. Gen. Ins. Corps.,* 419 U.S. 102, 140, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974) ("[S]ince ripeness is peculiarly a question of timing, it is the situation now rather than the situation at the time of the District Court's decision that must govern."). As of the present time, the Commission, created by Amendment 41, is not yet in existence, and it has not yet acted to enforce the gift bans.[7] While Plaintiffs allege that the Amendment's provisions have already had a chilling impact on both their professional and personal lives, in actuality, no enforcement or threat of enforcement of the gift bans has occurred.[8] It is the Commis-

---

7. We take judicial notice of the fact that four members of the Commission have been appointed and the selection process for the fifth member is underway. *See* Office of Administrative Courts, Colorado Department of Personnel & Administration, Independent Ethics Commission, http://www.colorado.gov/dpa/oac/IEC.htm (last

visited Feb. 21, 2008) (posting information regarding Commission and requesting applications for fifth member position).

8. Plaintiffs seek support for their argument in subsection 5(3)(a) of Amendment 41, which allows any person to file a complaint with the

sion that will implement the Amendment and develop rules to guide the enforcement of the gift bans. Perhaps, in the future, there may be truth to the concerns expressed by Plaintiffs, but that is for the Commission to consider as it enforces the Amendment, not for this court at this time. For now, these fears, which undoubtedly have caused Plaintiffs and others much anxiety, are merely speculative interpretations of what might occur once the Commission is operative. We refrain from entering this sphere of uncertainty.

 In many ways, the language of the Amendment creates a super-agency, a commission set apart from the legislative and executive branches of government so as to supervise the ethical conduct of both branches, and given the authority to administer, implement, and enforce the Amendment's provisions. With regard to administrative agencies, this court has continuously given deference to an "interpretation of a statute or regulation by the agency charged with its administration." *See Stell,* 92 P.3d at 915–16. When an agency has not yet promulgated rules or regulations to implement a certain statute, "objections to the statute are premature and do not present a justiciable controversy ripe for declaratory adjudication." *See N.Y. Coal. of Recycling Enters.,* 598 N.Y.S.2d at 655. The same can be said for the current situation. The voters of Colorado have given the Commission the power to enforce the Amendment's provisions; the Commission must have the room to exercise that power, subject to judicial review. Because the Commission has not yet had the opportunity to act, we find that any as-applied challenges to the Amendment's provisions are not ripe for adjudication.[9]

Perhaps most importantly, the principle of judicial restraint requires us to "avoid reaching constitutional questions in advance of the necessity of deciding them." *Lyng v. Nw. Indian Cemetery Protective Ass'n,* 485 U.S. 439, 445, 108 S.Ct. 1319, 99 L.Ed.2d 534 (1988). Because the Commission is not yet in existence and has not yet acted in furtherance of Amendment 41's provisions, we hold that Plaintiffs' claims are not ripe for review. Thus, the district court did not have jurisdiction to grant the preliminary injunction. Reversing the court's order on that ground, we refrain from considering the merits of Plaintiffs' arguments.

### IV. Conclusion

Today we hold that Amendment 41, as adopted by Colorado voters in November 2006, is self-executing. The Amendment's independent ethics commission was intended to implement and enforce its provisions, separate and apart from any further action of the legislature. We also recognize that Governor Ritter is a proper party defendant in this case. Nonetheless, because the preliminary injunction was issued before the Commission came into existence, and before it had the opportunity to act in furtherance of the Amendment, we find that Plaintiffs failed to present a ripe as-applied constitutional challenge. We do not address the other issues on appeal. We uphold the district court's denial of the motion to dismiss on the proper party and self-execution issues. Because the district court did not have the jurisdiction to grant a preliminary injunction, however, we reverse its order and direct the court to vacate the preliminary injunction.

Commission based on any action, within the preceding twelve months, which he or she believes violates the Amendment. This provision essentially sets forth the statute of limitations period for violations under the Amendment. It does not imply that any conduct following the Governor's proclamation of the Amendment on December 31, 2006, could automatically serve as the basis for an ethics complaint. The Commission must first act by, for example, adopting rules governing the complaint process, before there is any enforcement or threat of enforcement of the provisions.

9. In addition to their as-applied claims, Plaintiffs' complaint, as well as their brief to this court, seems to assert a facial challenge to the Amendment on the grounds of vagueness and overbreadth. The facial challenge, however, was not the basis of the trial court's ruling, and Plaintiffs' counsel in her oral argument to this court stated that the challenge before us was an as-applied one. Should Plaintiffs wish to pursue their First Amendment facial challenge on remand, they will need to meet the high standard set forth in *Virginia v. Hicks,* 539 U.S. 113, 123 S.Ct. 2191, 156 L.Ed.2d 148 (2003).