The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
November 15, 2018

## 2018COA157

**Nos. 15CA0342 & 15CA0531 Peo in Interest of A.C.E-D. —
Juvenile Court — Delinquency — Competency to Proceed**

A division of the court of appeals holds that the

then-applicable competency statute for juveniles, section

19-2-1301(2), C.R.S. 2015, is neither facially unconstitutional nor

unconstitutional as applied because it incorporated the definition of

"incompetent to proceed" for adults in criminal proceedings set out

in section 16-8.5-101(11), C.R.S. 2015.

COLORADO COURT OF APPEALS                        **2018COA157**

Court of Appeals Nos. 15CA0342 & 15CA0531
Jefferson County District Court Nos. 13JD285 & 13JD424
Honorable Ann Gail Meinster, Judge

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of A.C.E-D.,

Juvenile-Appellant.

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE WEBB
Harris and Welling, JJ., concur

Announced November 15, 2018

Cynthia H. Coffman, Attorney General, Megan C. Rasband, Assistant Attorney
General, Denver, Colorado, for Petitioner-Appellee

Law Office of Diana M. Richett, Diana M. Richett, Lakewood, Colorado, for
Juvenile-Appellant

¶ 1     Is the previous iteration of the competency statute for juveniles, section 19-2-1301(2), C.R.S. 2015, facially unconstitutional or unconstitutional as applied because it incorporated the definition of "incompetent to proceed" for adults in criminal proceedings set out in section 16-8.5-101(11), C.R.S. 2015?  The juvenile, A.C.E-D., raised this novel question in seeking dismissal of the misdemeanor theft and harassment charges against him, asserting these statutes did not allow the court to consider A.C.E-D.'s age and maturity.  The trial court rejected his constitutional arguments, found him competent to proceed, and convicted him of both charges, resulting in his adjudication and sentencing.

¶ 2     On appeal, A.C.E-D. challenges the adjudication on the same constitutional grounds.  Alternatively, he asserts that the juvenile court abused its discretion in finding him competent.  He also asserts evidentiary error in authenticating Facebook messages that supposedly constituted harassment and a one-year discrepancy between the dates of those messages as charged in the amended petition and as proven.  The Attorney General concedes preservation of the constitutional and evidentiary contentions.

¶ 3     We affirm.

## I.  Background

¶ 4     Following a complaint of shoplifting, police officers contacted A.C.E-D.  He confessed, led them to the merchandise, and was charged with misdemeanor theft.  In a separate case, A.C.E-D. was charged with misdemeanor harassment based on Facebook messages sent to his ex-girlfriend.

¶ 5     In both cases, A.C.E-D. pleaded guilty.  But before sentencing, he moved to determine competency and later moved to withdraw his guilty pleas.  Without addressing the pleas, the trial court ordered a competency evaluation.  A psychologist evaluated A.C.E-D. and recorded his findings in a report.  After receiving the psychologist's report, the court made a preliminary finding of competency.  Then A.C.E-D. requested a competency hearing.

¶ 6     Before that hearing was held, A.C.E-D. moved to dismiss the charges based on a facial constitutional challenge to the juvenile competency statute.  The court denied the facial challenge.  At the competency hearing, the court also rejected an as-applied challenge and found A.C.E-D. competent to proceed based on the psychologist's testimony and his report.

¶ 7    Still, the court allowed A.C.E-D. to withdraw his guilty pleas and conducted a bench trial.  The court found A.C.E-D. guilty of the charges and adjudicated him a juvenile delinquent.

## II.  The Juvenile Competency Statute Is Constitutional

### A.  Standard of Review

¶ 8    Constitutional challenges are reviewed de novo.  *Coffman v. Williamson*, 2015 CO 35, ¶ 13.  Because a statute is presumed constitutional, the party challenging it must prove unconstitutionality beyond a reasonable doubt.  *Anderson v. Colo. Dep't of Pers.*, 756 P.2d 969, 975 (Colo. 1988).  A successful facial challenge must show that "the law is unconstitutional in all its applications."  *Dallman v. Ritter*, 225 P.3d 610, 625 (Colo. 2010) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)).

¶ 9    An as-applied constitutional challenge succeeds if the statute is unconstitutional "under the circumstances in which the [plaintiff] has acted or proposes to act."  *Developmental Pathways v. Ritter*, 178 P.3d 524, 534 (Colo. 2008) (quoting *Sanger v. Dennis*, 148 P.3d 404, 410 (Colo. App. 2006)).  Unlike a successful challenge to facial validity, the result of "holding a statute unconstitutional as applied

3

is to prevent its future application in a similar context, but not to render it utterly inoperative." *Id.* (quoting *Sanger*, 148 P.3d at 410).

## B. Law

¶ 10    Under the Children's Code, a juvenile "shall not be tried or sentenced if the juvenile is incompetent to proceed, as defined in section 16-8.5-101(11), C.R.S. . . . ." § 19-2-1301(2). Under that statute,

> "[i]ncompetent to proceed" means that, as a result of a mental disability or developmental disability, the defendant does not have sufficient present ability to consult with the defendant's lawyer with a reasonable degree of rational understanding in order to assist in the defense, or that, as a result of a mental disability or developmental disability, the defendant does not have a rational and factual understanding of the criminal proceedings.

§ 16-8.5-101(11).

¶ 11    The party asserting the juvenile's incompetence bears the burden of submitting evidence, and bears the burden of persuasion by a preponderance of the evidence. § 19-2-1302(2).

4

## C. Application

### 1. Facial Challenge

¶ 12    A.C.E-D. makes three arguments why section 19-2-1301(2) is facially invalid: using the adult incompetency standard for juveniles violates their right to due process; the statute's requirement limiting juvenile incompetency to a finding of a mental or developmental disability is inconsistent with the test in *Dusky v. United States*, 362 U.S. 402, 402 (1960); and the statute violates due process because it places the burdens of submitting evidence and persuasion on juveniles.  We address, and reject, each argument in turn.

¶ 13    A.C.E-D. first argues that because the United States Constitution offers greater protections to juveniles in some circumstances, an incompetency standard that applies equally to both juveniles and adults is unconstitutional.  But A.C.E-D. does not cite, nor are we aware of, any Supreme Court or Colorado authority requiring different competency standards for juveniles.

¶ 14    Instead, A.C.E-D. cites to Supreme Court cases applying the Eighth Amendment to juveniles.  But these cases are uninformative because they did not address juveniles' competency to stand trial.  Rather, they addressed the constitutionality of executing a

defendant for a homicide committed as a juvenile or sentencing a juvenile to life in prison without the possibility of parole. *See Miller v. Alabama*, 567 U.S. 460, 479 (2012) (mandatory sentence of life without the possibility of parole); *Roper v. Simmons*, 543 U.S. 551, 578 (2005) (death penalty).

¶ 15    In both cases, the Court recognized important differences between children and adults: children have a diminished sense of responsibility, are more vulnerable to peer pressure, and have greater prospects for reform. *See Miller*, 567 U.S. at 471-74; *Roper*, 543 U.S. at 569-70. While these differences are reasons for sparing juveniles from the harshest of criminal punishments, they do not address juveniles' ability to assist their attorneys or comprehend the meaning of an adjudication proceeding. A.C.E-D. admits as much in his reply brief, conceding that he is not suggesting the Eighth Amendment applies to juvenile competency evaluations. And in any event, the trial of an incompetent defendant involves the Due Process Clause of the Fourteenth Amendment. *Pate v. Robinson*, 383 U.S. 375, 378 (1966); *accord People v. Zapotocky*, 869 P.2d 1234, 1237 (Colo. 1994). Unsurprisingly, A.C.E-D. next argues that the statute violates the due process rights of juveniles.

¶ 16    In some circumstances, especially police interrogations and the waiver of certain rights, courts have considered youth and all its associated circumstances when deciding due process requirements. *See, e.g., Gallegos v. Colorado*, 370 U.S. 49, 55 (1962) (confessions to police); *Haley v. Ohio*, 332 U.S. 596, 600-01 (1948) (same); *People in Interest of M.R.J.*, 633 P.2d 474, 476-77 (Colo. 1981) (same); *People in Interest of J.F.C.*, 660 P.2d 7, 9 (Colo. App. 1982) (guilty pleas and waiver of right to trial).  But A.C.E-D. does not explain why the factors that warrant special due process protections for juveniles under police interrogation or when waiving certain rights necessitate different competency standards for juveniles than for adults.  Although juveniles may be more susceptible to police interrogation or an unwitting waiver of fundamental rights because of their age, inexperience, and intelligence, these factors do not necessarily show incapacity to assist counsel or to understand the nature of a juvenile adjudication.  Indeed, the United States Supreme Court has held that juvenile adjudications do not need to conform with the due process requirements of a criminal trial.  *In re Application of Gault*, 387 U.S. 1, 30 (1967).  A juvenile adjudication,

instead, requires "fundamental fairness." *McKeiver v. Pennsylvania*, 403 U.S. 528, 543 (1971).

¶ 17    Colorado and other jurisdictions recognize that juveniles have a fundamental right not to be tried while incompetent. *People in Interest of W.P.*, 2013 CO 11, ¶ 37; *accord Matter of W.A.F.*, 573 A.2d 1264, 1267 (D.C. 1990); *In re K.G.*, 808 N.E.2d 631, 639 (Ind. 2004). And some states have gone further to consider factors unique to juveniles when making a competency determination. *See In re Carey*, 615 N.W.2d 742, 747-48 (Mich. Ct. App. 2000); *accord In re J.M.*, 769 A.2d 656, 662 (Vt. 2001). But both *Carey* and *J.M.* involved states that had no statutory juvenile competency test and neither court held that due process requires a juvenile-specific test. *See Carey*, 615 N.W.2d at 747; *In re J.M.*, 769 A.2d at 664. A.C.E-D. cites no authority, nor are we aware of any, holding that due process requires a different competency test for juveniles.

¶ 18    In sum, A.C.E-D. argues that because the Constitution treats juveniles differently from adults in some other circumstances, then it must do so as to competency. But a juvenile adjudication need only be fundamentally fair. Merely showing that "youth matters" and that "children are fundamentally different than adults" is not

8

enough to show that using the same competency test for both juveniles and adults is fundamentally unfair. Thus, we reject A.C.E-D.'s argument.

¶ 19    A.C.E-D. next argues that section 19-2-1301(2) violates the *Dusky* standard. There, the Supreme Court held that, to be competent to stand trial, a defendant must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding," and must have "a rational as well as factual understanding of the proceedings against him." 362 U.S. 402, 402 (1960) (citation omitted).

¶ 20    A.C.E-D. maintains that, based on the cross-reference to section 16-8.5-101(11), section 19-2-1301(2) is unconstitutional because it burdens the *Dusky* standard by also requiring a finding of either a mental or developmental disability for juvenile incompetency. Thus, A.C.E-D. continues, the statute would preclude a finding of incompetence for a juvenile who, despite not having a mental or developmental disability, is nevertheless incompetent under *Dusky* because of factors such as his age, cognitive ability, and cognitive development.

¶ 21    But to show facial invalidity, A.C.E-D. must show that the statute is unconstitutional in all its applications.  *Dallman*, 225 P.3d at 625.  So, just because the statute could allow a court to find some juveniles competent who would be incompetent under the two-part *Dusky* standard — for lack of a mental or developmental disability — that does not show facial invalidity.  This is because the statute would also allow a court to find a juvenile having a mental or developmental disability incompetent to proceed under the two-part *Dusky* test.  In other words, a court could apply the statute without running afoul of the *Dusky* test.  *Id.*  And because the statute could be applied constitutionally, A.C.E-D.'s facial invalidity argument falls short.  *Id.*

¶ 22    Not easily deterred, A.C.E-D. points to some states holding that *Dusky* does not require a juvenile to have a mental or developmental disability to be incompetent.  But these holdings were not on constitutional grounds.  Rather, the cases held that existing juvenile competency statutes in those states did not require a finding of mental or developmental disability for a court to declare a juvenile incompetent.  *See, e.g., In re Hyrum H.*, 131 P.3d 1058, 1062 (Ariz. Ct. App. 2006) (Arizona's juvenile incompetency

definition does not require a finding of mental disease, defect, or disability); *Timothy J. v. Superior Court*, 58 Cal. Rptr. 3d 746, 755 (Cal. Ct. App. 2007) (California's juvenile incompetency statute does not require that the minor have a mental disorder or developmental disability before finding that he is incompetent to stand trial).

¶ 23　Because Colorado's statute requires a finding of mental or developmental disability, decisions in other states that have adopted a more holistic approach to juvenile competency do not suggest that our approach is unconstitutional.　Again, A.C.E-D. seems to admit as much in his reply brief, where he says that he is asking "for acknowledgement of a growing body of law that emphasizes that 'youth matters' and that 'children are constitutionally different than adults.'"　But A.C.E-D. makes a public policy argument better presented to the General Assembly. *State Farm Mut. Auto. Ins. Co. v. Fisher*, 2018 CO 39, ¶ 26.[1]

¶ 24　Finally, A.C.E-D. argues that section 19-2-1301(2) violates due process because it places the burden of submitting evidence, as well as the burden of persuasion, on juveniles.　Like his due process

---

[1] Indeed, by adopting section 19-2-103(9.5), C.R.S. 2018, the General Assembly has addressed A.C.E-D.'s concerns.

11

argument above, A.C.E-D. asserts that because the Constitution grants certain protections to juveniles but not to adults, then it must always grant juveniles greater protections. Again, A.C.E-D. cites no authority holding that placing the burden of evidence and persuasion on a juvenile in a competency hearing is unconstitutional.

¶ 25    To the contrary, other states have held that placing the burden on juveniles does not violate due process. *See In re J.K.*, 873 N.W.2d 289, 296 (Iowa Ct. App. 2015); *State v. P.E.T.*, 344 P.3d 689, 694 (Wash. Ct. App. 2015). We find these cases persuasive, especially in the absence of any contrary authority, and follow them.[2]

¶ 26    In the end, because A.C.E-D. failed to show that under no set of circumstances would the statute be constitutional, we affirm the trial court's finding that the statute was not facially invalid.

---

[2] The Attorney General argues that because the statute allows the prosecution to raise the issue of a juvenile's competency and placing the burden of evidence and persuasion on the prosecution would not violate due process, the statute is not facially invalid. This argument is unpersuasive because due process protects individuals, not the state, from "arbitrary governmental restrictions on property and liberty interests." *Watso v. Colo. Dep't of Soc. Servs.*, 841 P.2d 299, 304 (Colo. 1992).

## 2. As-Applied Challenge

¶ 27     A.C.E-D. also mounts an as-applied challenge to the statute, arguing that the trial court's application of the statute precluded him from being declared incompetent because he did not prove that he had a mental or developmental disability.  To prevail, the record would have to show that A.C.E-D. presented evidence he was incompetent to proceed under *Dusky*, but the trial court still found him competent solely because he did not have a mental or developmental disability.  *See Developmental Pathways*, 178 P.3d at 534 (challenger must show how the statute was unconstitutional under the circumstances in which he acted).  The record shows otherwise.

¶ 28     A.C.E-D. points to evidence that he had an IQ of 74, which indicates a borderline level of functioning, and that he scored in in the one percentile on his Vineland assessment.[3]  And the psychologist's evaluation does declare A.C.E-D. competent because he does not have a mental or developmental disability.  Still, other

_____

[3] The psychologist who conducted the competency evaluation noted that a score of 74 could be an indication of a developmental disability.

information in the psychologist's report and referenced in the trial court's order shows that the statute was applied constitutionally.

¶ 29     The report makes several observations indicating competency: A.C.E-D. knew or learned the nature of the charges against him, he knew how he could assist his attorney, and he understood the adversarial nature of the proceedings.  As well, the psychologist observed that when A.C.E-D. was less hostile and more cooperative, he gave better answers.  The trial court found the evidence in the report sufficient to declare A.C.E-D. competent, especially considering A.C.E-D.'s failure to put forth his best effort in his competency evaluation.

¶ 30     In sum, because sufficient evidence in the record supports the trial court's finding of competency under the *Dusky* standard, A.C.E-D. has not proven beyond a reasonable doubt that the trial court unconstitutionally applied the statute to him.

### III.  The Trial Court Did Not Abuse Its Discretion in Finding A.C.E-D. Competent to Proceed

#### A.  Standard of Review

¶ 31     A.C.E-D.'s competence to proceed is a question of fact.  *People v. Palmer*, 31 P.3d 863, 865 (Colo. 2001), *superseded by statute as*

*stated in W.P.*, 2013 CO 11. The trial court's decision is reviewed for an abuse of discretion. *Id.* at 865-66. An abuse of discretion occurs when the trial court's "ruling is 'manifestly arbitrary, unreasonable, or unfair,' or where it is based on an erroneous view of the law." *People v. Elmarr*, 2015 CO 53, ¶ 20 (citation omitted).

## B. Law

¶ 32   In a juvenile proceeding, if the court believes that it lacks enough information to make a finding of competency, it shall order a competency evaluation. § 19-2-1302(1), C.R.S. 2015. A licensed psychiatrist or psychologist with expertise in evaluating juveniles generally conducts the evaluation and must, at minimum, provide an opinion as to whether the juvenile is incompetent. *Id.*

## C. Application

¶ 33   A.C.E-D. argues that he met his burden of proof during his competency hearing by presenting evidence of a learning disability, low IQ, an impaired capacity to acquire and retain verbal information, and a limited understanding of a juvenile adjudication and the roles of the various actors in it. But as discussed in Part II above, other evidence in the record suggests A.C.E-D. was competent. And the psychologist who conducted his competency

15

evaluation found A.C.E-D. competent to proceed. The trial court found the psychologist credible and that his report included sufficient information from which to declare A.C.E-D. competent.

¶ 34　Based on this conflicting evidence, we cannot say that the trial court was manifestly arbitrary, unreasonable, or unfair in finding the psychologist credible and using his report to find A.C.E-D. competent. *See People v. Corichi*, 18 P.3d 807, 812 (Colo. App. 2000) (trial court did not abuse its discretion in finding defendant competent to proceed despite evidence he experienced a brief delusional episode during trial).

## IV.　The Trial Court Did Not Abuse Its Discretion in Admitting the Facebook Messages

### A.　Additional Background

¶ 35　As of April 2013, the victim of the misdemeanor harassment charge and A.C.E-D. had been dating. They often communicated by messaging via Facebook. In mid-April, the victim attended the prom with her ex-boyfriend. A week later, she received messages from A.C.E-D.'s Facebook account (username AD) that she perceived as threatening. These messages were the sole evidence supporting the harassment charge.

16

¶ 36    At trial, a detective testified that he had printed from the victim's account a few of the almost 1000 Facebook messages exchanged between the victim and the AD account.

¶ 37    Then the prosecution called the victim. When she began testifying about Facebook messages exchanged with the AD account after the prom, A.C.E-D. objected for lack of authentication, citing out-of-state authority. The prosecutor asked for and received permission to develop further foundation.

¶ 38    The victim explained that she believed the messages had come from A.C.E-D. because of "incomplete spellings," "the way he talks," and private matters that would not be known to other people. She added that she had not altered any of the messages on her account. The trial court, noting "certain spelling patterns, modes of speaking and pet names," allowed the printout of the messages to be admitted.

¶ 39    On cross-examination, the victim acknowledged having received a message from M, a friend of A.C.E-D. or his sister, on the AD account, although in the message M had identified herself. Also, the victim admitted having seen A.C.E-D. lend his phone to D, another friend, so that D could use the AD account. And she said

17

that she had not sent one of the messages shown on the print out as having come from her Facebook account.

¶ 40 T.M., another friend of A.C.E-D., testified for the defense that A.C.E-D. lent his phone to friends and left it lying around. T.M. had sometimes used A.C.E-D.'s phone to access his own Facebook account.

¶ 41 A.C.E-D. did not testify.

## B. Standard of Review

¶ 42 A trial court's admission of evidence is reviewed for an abuse of discretion. *People v. Ibarra*, 849 P.2d 33, 38 (Colo. 1993). An abuse of discretion occurs when the trial court's "ruling is 'manifestly arbitrary, unreasonable, or unfair," or where it is based on an erroneous view of the law." *Elmarr*, ¶ 20 (citation omitted).

## C. Law

¶ 43 The "requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." CRE 901(a). "The burden to authenticate 'is not high — only a prima facie showing is required.'" *People v. Glover*, 2015 COA 16, ¶ 13 (citations omitted). Once evidence has

been authenticated and admitted, the fact finder determines its weight. *People v. Crespi*, 155 P.3d 570, 574 (Colo. App. 2006).

¶ 44 Facebook messages are similar to emails and may be authenticated through "testimony of a witness with knowledge that a matter is what it is claimed to be," or "through consideration of distinctive characteristics shown by an examination of their contents and substance in light of the circumstances of the case." *See Glover*, ¶ 24 (citing CRE 901(b)(4)). Authenticating Facebook messages requires two showings: first, the party seeking admission must show that the records were those of Facebook and, second, that the communications recorded therein were made by the purported party. *Id.* at ¶ 23.

¶ 45 As to the first step, A.C.E-D. did not raise this issue below and does not argue it on appeal.

¶ 46 Regarding the second step, a central concern for courts is the ease with which someone can assume the identity of another on Facebook. *Id.* at ¶ 29 (citing *Campbell v. State*, 382 S.W.3d 545, 550 (Tex. Ct. App. 2012)). Thus, "several jurisdictions have concluded that where a message is posted on a social networking website, additional corroborating evidence of authorship is required

19

beyond confirmation that the social networking account is registered to the party purporting to create those messages." *Id.* at ¶ 30 (collecting cases). A.C.E-D. has cited several out-of-state cases holding that trial courts abused their discretion in admitting messages from social networking sites without additional corroboration as to the sender. *See, e.g., State v. Eleck,* 23 A.3d 818, 824 (Conn. App. Ct. 2011) (messages could have been generated by anyone with access as they did not reflect distinct information only the purported author would know); *Griffin v. State,* 19 A.3d 415, 424 (Md. 2011) (identifying the date of birth of the creator and her image on the site insufficient to authenticate a social media page); *Commonwealth v. Williams,* 926 N.E.2d 1162, 1172-73 (Mass. 2010) (foundational testimony did not identify the person who actually sent the message, only that it came from the defendant's account); *Smith v. State,* 136 So. 3d 424, 434-35 (Miss. 2014) (witness did not testify as to how she knew the defendant had sent her the messages and the information in the messages was known to multiple people).

¶ 47     The *Glover* division also addressed authenticating the authorship of Facebook messages and recognized, among other

things, that witness testimony about making and receiving the Facebook messages at issue, the use of nicknames and other unique identifiers, as well as the witness' belief that she was never talking to someone other than the defendant, are all relevant factors that a trial court may consider. *Glover*, ¶ 32; *see also People v. Heisler*, 2017 COA 58, ¶ 16 (text messages admissible where victim testified that pictures of text messages were a fair and accurate representation of the texts she received, she recognized the phone number and used it to communicate with the defendant, and she recognized the context of the text messages as being from the defendant).

## D. Application

¶ 48 As indicated, the parties do not contest the first step. But A.C.E-D. does assert that the prosecution did not provide sufficient evidence to show that he wrote and sent the Facebook messages.

¶ 49 During the adjudication, the victim testified to distinct characteristics in the Facebook messages that identified A.C.E-D. as the likely author. The *Glover* division held that similar testimony was sufficient to authenticate Facebook messages. ¶¶ 29-33. However, unlike in *Glover*, A.C.E-D. presented evidence raising

21

doubt as to whether he had written the messages at issue. And he points to several cases from other states holding that authentication of social media messages requires more than a mere showing that the messages came from an account in the name of the sender and argues the prosecution failed to provide such evidence.

¶ 50    We decline to address A.C.E-D.'s out-of-state authority because *Glover* already requires additional evidence when authenticating Facebook messages. *Id.* at ¶¶ 29-33. Indeed, the division acknowledged the authentication problems inherent in Facebook messages but affirmed their admission after noting evidence in addition to the defendant's name and image appearing on the page. *Id.* And because the prosecution presented similar evidence in this case, it met the heightened authentication standard for Facebook messages. A.C.E-D.'s contrary evidence goes to weighing the messages, *Crespi,* 155 P.3d at 574, the very argument he made in closing.

¶ 51    For these reasons, we conclude that the trial court did not abuse its discretion in admitting the messages.

## V. A.C.E-D. Waived His Right to Appeal the Trial Court's Amendment to the Information Charging Him with Harassment

### A. Additional Background

¶ 52 The initial information charged A.C.E-D. with harassment that occurred on or about April 21, 2013. A.C.E-D. entered a guilty plea to the harassment charge but moved to withdraw it. On October 16, 2014, the prosecution moved to amend the harassment count to include a date range between April 21 and April 22, 2014. The record does not explain the date discrepancy, and A.C.E-D. did not raise it. The trial court granted the motion.

¶ 53 After A.C.E-D.'s adjudication, he moved for a new trial raising, for the first time, the date range in the amended information. He contended that the trial court erred in failing to dismiss the case when all the evidence presented against him showed that the alleged harassment took place on or between April 21 and 22, 2013, and not on or between April 21 and 22, 2014. The trial court denied the motion and amended the date to 2013 under Crim. P. 36.

¶ 54    The Attorney General argues that A.C.E-D. waived his right to appeal because of his delay in objecting to the date amendment. We agree.

## B.  Waiver

¶ 55    Waiver is the "*intentional* relinquishment of a *known* right or privilege." *People v. Rediger*, 2018 CO 32, ¶ 39 (citation omitted). When a party waives a right or privilege, the waiver precludes appellate review. *Id.*  A waiver may be express or implied.  *Id.* at ¶ 42.

¶ 56    An appellate court "presume[s] that attorneys know the applicable rules of procedure." *Hinojos-Mendoza v. People*, 169 P.3d 662, 670 (Colo. 2007).  "Objections based on defects in the form of the summons or complaint must be raised by motion before trial" and failure to do so constitutes a waiver.  *People v. Dickinson*, 197 Colo. 338, 339, 592 P.2d 807, 808 (1979).  This rule ensures that litigation is "determined on the merits and not on the basis of technical rules."  *Id.*

¶ 57    An amendment is one of form if it does not add an essential element of the offense and "the original information provided notice such that the defendant was adequately advised of the charges

24

against him." *People v. Washam*, 2018 CO 19, ¶¶ 18, 26. As well, an amendment to the date of the charge is one of form so long as "the time or date of commission of the offense is not a material element of the charged crime." *People v. James*, 40 P.3d 36, 48 (Colo. App. 2001).

## C. Application

¶ 58    A.C.E-D. argues that the amendment to the date is one of substance because it charged an impossible date. He relies on authority that "[a] crime cannot be charged *in futuro* and an indictment or information that purports to do so in legal effect charges nothing and is without efficacy." *Rowse v. Dist. Court*, 180 Colo. 44, 47, 502 P.2d 422, 424 (1972). But, this case is inapplicable because the information was amended in October 2014 and alleged a past date range, April 21-22, 2014.

¶ 59    A.C.E-D. makes no other arguments that the amendment was one of substance. Importantly, he does not maintain that the time or date is a material element of his harassment charge; nor does the statute suggest that it is. *See* § 18-9-111(1)(e), C.R.S. 2018 (listing elements of harassment). Thus, we conclude that the amendment did not add an essential element of the offense.

¶ 60 The amendment at issue could also be one of substance if the original information did not provide A.C.E-D. with adequate notice of the charges against him. *Washam,* ¶ 26. A.C.E-D. does not argue that he lacked adequate notice of the charges against him.

¶ 61 Because the amendment to the offense date did not add an essential element to the crime or prejudice A.C.E-D.'s defense, we hold that the amendment to the information was one of form. So, to preserve the issue, A.C.E-D. needed to object prior to the start of trial. *Dickinson,* 197 Colo. at 339, 592 P.2d at 808.

¶ 62 During his adjudication, A.C.E-D. defended himself on the merits: he cross-examined witnesses, called witnesses of his own, and challenged the evidence admitted against him. Only after he lost on the merits did A.C.E-D. challenge his adjudication on the inadequacy of the information. Our supreme court has rejected such a trial strategy. *Id.*

¶ 63 Therefore, A.C.E-D. waived his challenge.

## IV. Conclusion

¶ 64 We affirm A.C.E-D.'s adjudication as to both the theft and the harassment charges.

JUDGE HARRIS and JUDGE WELLING concur.