24CA0756 Peo in Interest of GDO 11-14-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0756
Jefferson County District Court No. 23JV30013
Honorable Ann Gail Meinster, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of G.D.O., a Child,

and Concerning D.T.,

Appellant.

---

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE LUM
Freyre and Grove, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 14, 2024

---

Kimberly Sorrells, County Attorney, Sarah Oviatt, Assistant County Attorney, Golden, Colorado, for Appellee

Samantha Metsger, Guardian Ad Litem

Harald Van Gaasbeek, Office of Respondent Parents' Counsel, Fort Collins, Colorado, for Appellant

¶ 1    D.T. (mother) appeals the judgment terminating the parent-child legal relationship with her child, G.D.O.  We affirm.

## I.    Background

¶ 2    In January 2023, the Jefferson County Division of Children, Youth and Families (Division) received a report of domestic violence between mother and her boyfriend.  The Division asked mother to submit to a drug screen, and she tested positive for controlled substances.  After receiving the test results, the caseworker attempted to meet with mother to discuss a safety plan, but while at the home, mother became "escalated" and was arrested for assaulting a police officer.  As a result, the Division removed the child and placed him with maternal great-aunt.

¶ 3    Based on this information, the Division filed a petition in dependency and neglect.  Mother admitted to the allegations in the petition, and the juvenile court adjudicated the child dependent and neglected.  The court then adopted a treatment plan for mother that required her to (1) address her substance abuse issues; (2) provide for the child's needs; and (3) ensure a home free of violence.

¶ 4    In October 2023, the guardian ad litem (GAL) moved to terminate mother's parental rights.  The juvenile court held an

1

evidentiary hearing in January 2024. After considering the evidence, the court granted the GAL's motion and terminated mother's parental rights.

## II. Expert Witness Disclosure

¶ 5 Mother asserts that the juvenile court erred by allowing the caseworker to testify as an expert witness even though the GAL did not disclose the caseworker as an expert before the termination hearing. She also asserts that the lack of disclosure resulted in a violation of her due process right to a fundamentally fair proceeding. We disagree.

### A. Standard of Review

¶ 6 We review the juvenile court's resolution of discovery issues for an abuse of discretion. *People v. Bueno*, 2013 COA 151, ¶ 10, *aff'd*, 2018 CO 4; *People in Interest of S.L.*, 2017 COA 160, ¶ 68 (admission of expert testimony). An abuse of discretion occurs only when the court's decision is manifestly arbitrary, unreasonable, or unfair, or when it is based on an erroneous view of the law. *People in Interest of A.C.E-D.*, 2018 COA 157, ¶ 31.

¶ 7 An error in the admission of evidence is harmless if it does not affect a substantial right of a party. C.R.C.P. 61; *People in Interest*

2

*of D.B.*, 2017 COA 139, ¶ 31.  An error affects a substantial right if it can be said with fair assurance that it substantially influenced the outcome of the case or impaired the basic fairness of the trial itself.  *D.B.*, ¶ 31.

¶ 8      Because parents have a fundamental liberty interest in the care, custody, and control of their children, *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 17, due process requires the government to provide fundamentally fair procedures to a parent facing termination, *People in Interest of R.J.B.*, 2021 COA 4, ¶ 27.  In termination proceedings, a parent is entitled to notice of the hearing, advice of counsel, and the opportunity to be heard and defend.  *People in Interest of Z.P.S.*, 2016 COA 20, ¶ 40.

¶ 9      We review procedural due process claims de novo.  *People in Interest of C.J.*, 2017 COA 157, ¶ 25.  But a parent may not obtain relief on a due process claim absent a showing of harm or prejudice.  *People in Interest of J.A.S.*, 160 P.3d 257, 262 (Colo. App. 2007).

## B.    Analysis

¶ 10     At the termination hearing, the GAL asked the juvenile court to qualify the ongoing caseworker as an expert in casework with an emphasis in child protection.  Mother objected because the GAL did

not disclose the caseworker as an expert witness on his witness list. The GAL admitted that he had not disclosed the caseworker as an expert, but he argued that there was no surprise because mother knew that the caseworker would be testifying about her work on the case.

¶ 11     The juvenile court found that the caseworker was not properly disclosed as an expert witness but agreed with the GAL that mother should not be surprised given her involvement throughout the case. Nevertheless, the court asked mother's counsel whether she wanted to "meet with the caseworker before . . . begin[ning] examination" to "cure any prejudice" from the late disclosure. She declined, stating that she did not "need to discuss anything with" the caseworker because she had the caseworker's report. The court then qualified the caseworker as an expert in casework with an emphasis in child protection.

¶ 12     To begin, we note that mother has not directed us to any authority that required the GAL to disclose the caseworker as an expert witness before the termination hearing. At the time of the termination hearing, the Colorado Rules of Juvenile Procedure did not include any provisions related to the disclosure of expert

witnesses.[1]  That said, when the juvenile rules do not specifically address an issue, courts may apply the Colorado Rules of Civil Procedure.  *See* C.R.J.P. 1.  But C.R.C.P. 26, the civil rule requiring expert witness disclosures, does not apply in dependency and neglect cases unless specifically "ordered by the court or stipulated by the parties."  Mother has not directed us to anything indicating that either the juvenile court ordered compliance with, or the parties stipulated to the application of, C.R.C.P. 26.  Nevertheless, we will assume, in the absence of any controlling authority, that the GAL needed to, at a minimum, disclose that the caseworker would testify as an expert witness.

¶ 13      We reject mother's appellate contention for three reasons.

¶ 14      First, the juvenile court did not abuse its discretion by permitting the caseworker to testify as an expert because the record clearly shows that the GAL's failure to disclose the caseworker as an expert did not deny mother the opportunity to defend against the evidence.  *Cf. Todd v. Bear Valley Vill. Apartments*, 980 P.2d 973,

---

[1] C.R.J.P. 4.6(g) (effective July 1, 2024) now requires disclosure of expert witness reports and qualifications no later than seven days before a contested hearing.

979 (Colo. 1999) (holding that, under C.R.C.P. 37, witness preclusion is inappropriate if late disclosure is harmless). Mother's counsel admitted that she knew what the caseworker would testify to because she had a copy of her report, declined the juvenile court's offer to remedy any prejudice, and did not ask for a continuance. *See S.L.*, ¶ 72 (rejecting a parent's assertion that the court erred by admitting expert testimony where the parent "cited nothing other than the Department's technical noncompliance with the rule as the rationale for barring the testimony").

¶ 15 Second, even if the juvenile court abused its discretion by allowing the caseworker to testify as an expert at the hearing, any error was harmless. *See D.B.*, ¶ 31. The court admitted the caseworker's expert report, without objection, and the few expert opinions the caseworker expressed were consistent with those expressed in her report. *See* § 19-3-604(3), C.R.S. 2024 (noting that the court may receive and consider written reports relating to the child's mental, physical, and social history in a termination hearing). Therefore, because the challenged testimony was cumulative of the report, we discern no reversible error. *See People*

*in Interest of M.V.*, 2018 COA 163, ¶ 67, *overruled on other grounds by People in Interest of E.A.M. v. D.R.M.*, 2022 CO 42.

¶ 16     Finally, we disagree with mother that the termination judgment should be reversed because her procedural due process rights were violated.  Considering the information above, nothing in the record suggests that mother was deprived of notice of the hearing, advice of counsel, or the opportunity to be heard and defend.  *See Z.P.S.*, ¶ 40.  And mother does not identify any testimony that was inconsistent with the caseworker's report or that generated unfair surprise, and she has not otherwise established that she suffered any harm or prejudice because of the juvenile court's ruling.  *See J.A.S.*, 160 P.3d at 262.

## III.    Reasonable Efforts

¶ 17     Mother contends that the juvenile court erred by finding that the Division made reasonable efforts to rehabilitate her and reunify her with the child.  We disagree.

### A.    Applicable Law and Standard of Review

¶ 18     In deciding whether to terminate parental rights under section 19-3-604(1)(c), the juvenile court must consider whether the county department of human services made reasonable efforts to

rehabilitate the parent and reunite the parent with the child. §§ 19-1-103(114), 19-3-208, 19-3-604(2)(h), C.R.S. 2024. The Colorado Children's Code defines "reasonable efforts" as the "exercise of diligence and care" to reunify parents with their children.

¶ 19    The reasonable efforts standard is satisfied if the department provides services in accordance with section 19-3-208. § 19-1-103(114). Section 19-3-208 requires departments to provide screenings, assessments, and individual case plans for the provision of services; home-based family and crisis counseling; information and referral services to available public and private assistance resources; family time; and placement services. § 19-3-208(2)(b). If additional funds are available, the department must also provide substance abuse treatment services. § 19-3-208(2)(d)(V).

¶ 20    In assessing the department's reasonable efforts, the juvenile court should consider whether the services provided were appropriate to support the parent's treatment plan, *People in Interest of S.N-V.*, 300 P.3d 911, 915 (Colo. App. 2011), by "considering the totality of the circumstances and accounting for all services and resources provided to a parent to ensure the

8

completion of the entire treatment plan," *People in Interest of My.K.M. v. V.K.L.*, 2022 CO 35, ¶ 33.  But the parent is ultimately responsible for using the services to comply with the plan, *People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011), and the court may consider a parent's unwillingness to participate in treatment in determining whether the department made reasonable efforts, *see People in Interest of A.V.*, 2012 COA 210, ¶ 12.

¶ 21     Whether a department of human services satisfied its obligation to make reasonable efforts is a mixed question of fact and law.  *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8.  We review the juvenile court's factual findings for clear error and review de novo its legal determination, based on those findings, as to whether the department satisfied its reasonable efforts obligation.  *Id.*[2]

---

[2] The Division contends there is a divisional split regarding the standard of review applicable to reasonable efforts issues.  *See People in Interest of E.S.*, 2021 COA 79, ¶ 16 (noting that whether we review a reasonable efforts determination de novo or for clear error is not clear).  To the extent a divisional split exists, we need not resolve it because the outcome is the same under both standards.  *Id.* at ¶¶ 16-17.

## B. Analysis

¶ 22 Mother maintains that the Division failed to make reasonable efforts because it did not provide her with (1) adequate substance abuse treatment services; (2) a telephone; and (3) housing resources. We discern no reversible error.

¶ 23 First, the record shows that the Division provided mother with the necessary resources for her to comply with the substance abuse component of her treatment plan, but she did not use those services. *See A.V.*, ¶ 12; *S.N-V.*, 300 P.3d at 915. The caseworker testified that the Division made a referral for mother to do a substance abuse evaluation, but she never completed it. The caseworker also said that she offered to drive mother to the evaluation and attempted to do so, but mother slept through the appointment. The Division also arranged for monitored sobriety, but mother only completed seven screens, all of which were positive for controlled substances.

¶ 24 Second, we reject mother's assertion that the Division failed to provide reasonable efforts because it did not provide her with a phone. The caseworker testified that, despite some communication struggles, she was able to regularly maintain contact with mother.

Indeed, the record shows that the caseworker utilized a plethora of different communication mediums to reach mother, including calling mother when mother had WiFi, calling maternal grandmother, contacting mother by email, and visiting her in person. Section 19-3-208 does not require the Division to furnish a parent with a phone, mother never asked the Division to provide her a phone, and nothing in the record shows that mother's communication problems prevented her from completing the treatment plan objectives.

¶ 25 We recognize that the Division did not provide mother with housing resources, which may have contributed to difficulties in fulfilling certain "action steps" that were part of mother's treatment plan objectives. For example, one component of the objective that the child be "cared for by safe and substance . . . free adults" was that mother "provide a safe, stable, and substance-free environment" for the child. As the juvenile court acknowledged, housing was "a barrier" because maternal grandmother — with whom mother lived — was also a substance user.

¶ 26 Nevertheless, even if the Division's failure to provide mother with housing resources rendered its efforts in this area

unreasonable, we perceive no reversible error. The record reflects that the juvenile court did not primarily rely on mother's living situation when it concluded that she hadn't complied with her treatment plan. Instead, it terminated mother's parental rights as a result of her noncompliance with other aspects of her treatment plan, particularly her failure to (1) complete a substance use evaluation, engage in treatment in any meaningful way, or demonstrate any period of sobriety; (2) complete an anger management evaluation or any domestic violence treatment; and (3) engage consistently with family time.

¶ 27 For these reasons, any error the court made in concluding that the Division's efforts related to housing were reasonable did not affect mother's substantial rights because it did not "substantially influence[] the outcome of the case." *See D.B.*, ¶ 31.

## IV. Less Drastic Alternative

¶ 28 Mother argues that the juvenile court erred by finding that there was no less drastic alternative to termination. Specifically, she asserts that an allocation of parental responsibilities (APR) to maternal great-aunt was a viable less drastic alternative. We disagree.

12

¶ 29    Before terminating parental rights under section 19-3-604(1)(c), the juvenile court must consider and eliminate less drastic alternatives. *People in Interest of M.M.*, 726 P.2d 1108, 1122-23 (Colo. 1986). In considering less drastic alternatives, a court must give primary consideration to the child's physical, mental, and emotional conditions and needs. § 19-3-604(3); *People in Interest of Z.P.*, 167 P.3d 211, 214 (Colo. App. 2007). The court may consider various factors when deciding whether there is a viable less drastic alternative to termination, including whether (1) an ongoing relationship between the parent and child would be beneficial, *A.R.*, ¶ 38; (2) the child is bonded with the parent, *People in Interest of N.D.V.*, 224 P.3d 410, 421 (Colo. App. 2009); and (3) the placement option prefers adoption over an APR, *S.N-V.*, 300 P.3d at 920.

¶ 30    For a less drastic alternative to be viable, it must do more than "adequate[ly]" meet a child's needs; rather, it must be the "best" option for the child. *A.M.*, ¶ 27. Therefore, if the juvenile court considers a less drastic alternative but finds instead that termination is in the child's best interests, it must reject the less drastic alternative and order termination. *Id.* at ¶ 32. And under

13

those circumstances, we must affirm the court's decision if its findings are supported by the record. *People in Interest of B.H.*, 2021 CO 39, ¶ 80.

¶ 31 The juvenile court found that there was no less drastic alternative to termination and that termination and adoption was in the child's best interests. The court noted that maternal great-aunt preferred adoption over an APR but also recognized that "[t]he preference of the caregiver is only one factor the [c]ourt may consider." In large part, the court concluded that an APR was not a less drastic alternative to termination in this case because an ongoing relationship with mother would not be beneficial for the child. *See A.R.*, ¶ 38. Specifically, the court based this conclusion on "[t]he protective concerns posed by untreated substance use disorder, domestic violence issues, and criminal history."

¶ 32 Because the record supports the juvenile court's determination, we decline to disturb its judgment. *See B.H.*, ¶ 80. As previously noted, the record shows that mother did not participate in any substance abuse treatment and continued to test positive for substances during the case. The caseworker also stated that, although mother ended the relationship that she was involved

14

in at the beginning of the case, she later engaged in another abusive relationship. And the caseworker said that mother had not completed an anger management evaluation or done anything else to address the domestic violence issues. Finally, the record shows that mother committed assault during the case, was sentenced to probation, did not comply with her probation, and had an active warrant.

¶ 33 Mother asserts that the juvenile court erred because the evidence established that (1) she had a bond with the child and (2) maternal great-aunt might be open to an APR. As noted, whether a child has a bond with a parent, *see N.D.V.*, 224 P.3d at 421, and the placement is open to an APR, *see S.N-V.*, 300 P.3d at 920, are factors that the court may consider when deciding if there is a viable less drastic alternative to termination. But as the court correctly noted, these are just some of the factors that are relevant in deciding whether a less drastic alternative is viable. *See A.R.*, ¶ 38 (noting that the court "may consider various factors" in its analysis of less drastic alternatives). And here the court determined that, because mother had not resolved any of the safety concerns in this case, an ongoing relationship would not benefit the child,

regardless of whether he was bonded with mother or the maternal great-aunt would accept an APR. Because the record supports the court's findings, we cannot reweigh the evidence or substitute our judgment to reach a different conclusion. *See B.H.*, ¶ 80; *A.M.*, ¶ 32; *see also People in Interest of S.Z.S.*, 2022 COA 133, ¶ 29.

## V. Disposition

¶ 34 The judgment is affirmed.

JUDGE FREYRE and JUDGE GROVE concur.